UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOSEPH KUSS, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| AMERICAN HOMEPATIENT, INC., and LINCARE HOLDINGS, INC. | |
| Defendants. | |

Plaintiff JOSEPH KUSS ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, allege the following against Defendants American HomePatient, Inc. ("American HomePatient"), and Lincare Holdings, Inc. ("Lincare") (collectively "Defendants"), based upon personal knowledge with respect to Plaintiff's self and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.  Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard personally identifiable information, including without limitation names, social security numbers, dates of birth, addresses, diagnosis codes, financial information, and treatment information ("PII"), and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their PII had been stolen and precisely what types of information was stolen. Plaintiff seeks, among other things, orders requiring Defendants to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices and safeguards to prevent incidents like the disclosure in

1

the future.

2.      On or about January 6, 2017, American HomePatient's office in Newark, Delaware was burglarized. Several unencrypted computer hard drives containing personal information of at least 13,861, and potentially in excess of one million, customers/patients of Defendants. ("Data Disclosure").

3.      This case does not involve a *breach* of a computer system *by* a third party, but rather an unauthorized *disclosure* of the PII of Plaintiff and Class members by the Defendants *to* unknown third parties.

4.      Defendant Lincare is one of the largest home care and respiratory care companies in North America, operating approximately 1,000 locations in 48 U.S. states and Canada. Defendant Lincare closed on the acquisition of Defendant American HomePatient on or about February 2, 2016. Defendant Lincare has an estimated customer base in excess of 1 million patients.

5.      As one of the largest home care and respiratory care companies Lincare collects, stores, and maintains a massive amount of personally identifiable data on its customers and/or patients.

6.      By obtaining, collecting, using, and deriving a benefit from Plaintiff's and the Class Members' PII, Defendants assumed legal and equitable duties to those individuals. Defendants knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure. At all relevant time, Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII.

7.      Defendants failed to adequately protect Plaintiff's and Class Members' PII from involuntary breach and disclosure resulting in a large disclosure of PII. Defendants then

compounded the problem by not immediately notifying those affected by this serious lapse in security.

8.      Defendants' Newark, Delaware, office was burglarized on January 6, 2017; however, Defendants failed to notify their customers/patients, and the various state attorney general's offices as required by certain states, until approximately 60 days after the break-in and theft of the PII. As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continued to be, at significant risk to identity theft and various other forms of personal, social, and financial harm.

9.      The Data Disclosure not only reveals that Defendants failed to exercise reasonable care in storing and protecting Plaintiff's and Class Members' PII; it exposed the PII of at least 13,681, and potentially in excess of one million, customers/patients to fraud and misuse by unauthorized third parties. The affected individuals face a real, concrete, and actual risk of harm and future identity theft as the PII contained confidential biographical information.

10.     As a consequence of the Data Disclosure, Plaintiff and Class members have suffered damages by taking measures to both deter and detect identity theft. Class members have been required to take time, which they otherwise would have dedicated to other life demands (such as work), and effort to mitigate the actual and potential impact of the Data Disclosure on their lives including, *inter alia*; placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable: indeed, for many consumers it is the way they are compensated; and even if retired from the workforce, consumers should be free

of having to deal with the consequences of companies' wrongful conduct, as is the case here.

11.     Without question, the PII of Plaintiff and Class members, particularly their Social Security numbers and dates of birth, can be used for purposes of identity theft, and unfortunately, American HomePatient's current and former customers/patients are now, and for the rest of their lives will be, at a heightened risk of further identity theft and fraud.

12.     Plaintiff brings this class action against American HomePatient for failing to adequately secure and safeguard the PII of Plaintiff and the Class, for failing to comply with industry standards encrypting computers and hard drives that contain PII, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class members as to precisely how and when their sensitive personal information had been given to unknown persons.

13.     Lincare and American HomePatient disregarded the rights of Plaintiff and Class members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that their customers/patients' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiff and Class members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## PARTIES

14.     Plaintiff Joseph Kuss is a citizen and resident of Middletown, Delaware.

15.     At all times relevant to this Complaint, Plaintiff was a customer/patient of American HomePatient, whose PII was disclosed without his authorization to an unknown third

party as a result of the Data Disclosure.

16.     Defendant American HomePatient, Inc., is a Tennessee corporation with its principal address at 19387 US Highway 19 N, Clearwater, Fl 33764, according to its registration with the Tennessee Secretary of State.

17.     Defendant Lincare Holdings, Inc., is a Delaware corporation with its principal address at 19387 US 19 N, Clearwater, FL 33764, according to its registration with the Florida Secretary of State.

18.     Defendant Lincare acquired American HomePatient on February 2, 2016. Lincare integrated American HomePatient into its healthcare and sales network, expanding Lincare's customer/patient base to exceed one million customer/patients.

19.     Together, Defendants are a major supplier of respiratory-therapy products and services for patients in the home. Defendants provide services and supplies for oxygen therapy, nebulizer therapy, home infusion therapy, sleep therapy, ventilator therapy, enteral therapy, pediatric services, caring responders medical alert systems, long term care, and disease management programs.

20.     Prior to Lincare's acquisition, Defendant American HomePatient operated in 38 states with 220 office locations and 2,700 employees.

21.     Defendant Lincare operates in 48 states and with the acquisition of Defendant American HomePatient has a customer/patient base exceeding one million customer/patients.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) ("CAFA"), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 Class members, as

Defendants reports indicate that more than 13,000 customers/patients were affected Data Disclosure,[1] and at least one class member is a citizen of a state different from Defendants.

23.     This Court has personal jurisdiction over Lincare because Lincare maintains its principal place of business in this District, regularly conducts business in this District, and is authorized to and does conduct substantial business in this District. This Court also has personal jurisdiction over American HomePatient because American HomePatient maintains its principal place of business in this District, regularly conducts business in this District, and is authorized to and does conduct substantial business in this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) & (2) because Defendants' principal places of business are in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

25.     As a condition of providing respiratory care products, Defendants require that their customers/patients entrust them with certain personal information. In their ordinary course of business, Defendants maintain personal information, including the name, address, zip code, date of birth, Social Security number, and personal medical information of each current and former customers/patients.

26.     Plaintiff and the Class members, as current and former customers/patients, relied on Defendants to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

---

[1]     *Data Breach Reports*, Identity Theft Resource Center, (Oct. 10, 2017), available at https://csrps.com/ Media/Default/2017%20Reports/2017-ITRC-Data-Breach-Report.pdf (last visited August 31, 2018).

27.     Defendants had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' PII from involuntary disclosure to third parties.

28.     On January 7, 2017, Defendant American HomePatient learned that its Newark, Delaware, office had been burglarized and that several unencrypted computer hard drives were stolen. The files on these computer hard drives contained personal and protected information. On March 6, 2017, Defendant American HomePatient notified Attorneys General across the country of the breach and provided them a copy of a notice that Defendant American HomePatient allegedly was "sending out… to its customers/patients."

29.     On or about March 6, 2017, Defendant American HomePatient sent a letter to current and former customers/patients, advising that Defendant American HomePatient discovered on January 7, 2017, its office in Newark, Delaware "had been burglarized" and that "[s]everal computer hard drives containing personal information were stolen from the office during the burglary" and "may have included first and last names, American HomePatient account numbers, Social Security Numbers, diagnosis codes, date of birth [sic], financial information, and treatment information."

30.     Upon information and belief, the March 6, 2017, letter was the first notice received by Defendant American HomePatient's current and former customers/patients that their PII had been wrongly disclosed.

31.     The March 6, 2017, letter failed to advise of the actual date of the Data Disclosure (only when it was discovered), or why Defendant American HomePatient waited two (2) months after discovering the incident to notify customers/patients of the Data Disclosure.

32.     Defendants could have prevented this Data Disclosure by simply encrypting the stolen hard drives and computer files containing PII on those stolen hard drives.

7

33.     Defendants' negligence in safeguarding its customers/patients' PII is exacerbated by the repeated warnings and alerts directed to protecting and securing electronics.

34.     Defendants have acknowledged the sensitive and confidential nature of the PII. To be sure, collection, maintaining, and protecting PII is vital to many of Defendants' business purposes. Defendants have acknowledged through conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure. Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgments of data breach and data security compromises, and despite their own acknowledgment of their duties to keep PII private and secure, Defendants failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

35.     Upon discovery, Defendant American HomePatient failed to take reasonable steps to clearly and conspicuously inform Plaintiff and the other Class Members of the nature, timing and extent of the Data Disclosure. By failing to provide adequate, timely notice, Defendant American HomePatient prevented Plaintiff and Class Members from protecting themselves from the consequences of the Data Disclosure.

36.     The ramifications of Defendants failure to keep its customers/patients' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

37.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud

committed or attempted using the identifying information of another person without authority."[2] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[3]

38.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

39.     The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years, later.[4]

40.     Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

41.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant

---

[2]     17 C.F.R. § 248.201 (2013).

[3]     *Id.*

[4]     *Identity Theft and Your Social Security Number*, Social Security Administrative *available at* http://www.ssa.gov/pubs/EN-05-10064.pdf (last visited August 31, 2018).

paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security Number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

42.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[5]

43.     Based on the foregoing, the information compromised in the Data Disclosure is significantly more valuable than the loss of, say, credit card information in a large retailer data breach such as those that occurred at Target and Home Depot, because, there, victims could cancel or close credit and debit card accounts. The information compromised in the Lincare Data Disclosure is impossible to "close" and difficult, if not impossible, to change—Social Security number, name, date of birth, address, medical information, and other PII.

44.     This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[6]

45.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police

---

[5]     Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited August 31, 2018).
[6]     Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at* http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited August 30, 2018).

during an arrest.

46.     The fraudulent activity resulting from the Data Disclosure may not come to light for years.

47.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

48.     Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

49.     Despite all of the publicly available knowledge of the continued compromises of PII, Defendants' approach to maintaining the privacy of its customers/patients' PII was lackadaisical, cavalier, reckless, or in the very least, negligent.

50.     Defendants have failed to provide appropriate and adequate compensation to Plaintiff and Class Members victimized in this Data Disclosure.

51.     It is incorrect to assume that reimbursing a consumer for financial loss due to fraud makes that individual whole again. On the contrary, after conducting a study, the U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal

---

[7] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at* http://www.gao.gov/new.items/d07737.pdf (last visited August 31, 2018).

information used for fraudulent purposes, 29% spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims." [8]

52.     To date, Defendant American HomePatient has offered its customers/patient only one year of credit monitoring service through Epiq. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face, particularly in light of the PII stolen.

53.     As a result of Defendants' failures to prevent the Data Disclosure, Plaintiff and Class Members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety and emotional distress. They have suffered or are at increased risk of suffering:

a.   Unauthorized use and misuse of their PII;

b.   The loss of the opportunity to control how their PII is used;

c.   The diminution in value of their PII;

d.   The compromise, publication, and/or theft of their PII;

e.   Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

f.   Lost opportunity costs and lost wages associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

g.   Delay in receipt of tax refund monies;

---

[8]   *Victims of Identity Theft*, 2012 (Dec. 2013) at 10, 11, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf (last visited August 31, 2018).

h.   Lost opportunity and benefits of electronically filing of income tax returns;

i.   The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

j.   The continued risk to their PII, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake appropriate measures to protect the PII in their possession; and

k.   Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Disclosure for the remainder of the lives of Plaintiff and Class Members.

54.   Plaintiff has experienced and became the victim of identity theft and mail fraud on or around March 1, 2017, when at least three credit cards were fraudulently opened in his name using his PII, which was disclosed without his authorization in the Data Disclosure.

55.   Following the discovery of this identity theft and mail fraud, Plaintiff spent at least eight (8) hours with credit bureaus to setup extended fraud protection, establish security freezes on his credit information, and run credit reports. Plaintiff subsequently spent in excess of thirty-five (35) hours running credit reports, monitoring for fraudulent activity, contacting credit bureaus to remove fraudulent activity, and speaking with financial institutions to close and cancel accounts fraudulently opened in his name.

56.   In addition to taking these extensive precautions and mitigating any nefarious efforts to steal his PII, Plaintiff also contacted local law enforcement to open an investigation into the fraudulent activity; however, the local police informed Plaintiff there were insufficient resources to investigate Plaintiff's fraudulent activity, and that Plaintiff would have to handle it on his own without assistance from local law enforcement.

57.     Further, Plaintiff discovered nefarious actors fraudulently setup temporary mail forwarding to divert fraudulently-opened payment cards (e.g., credit cards) from Plaintiff's home address to an address, upon information and belief, associated with those nefarious actors who fraudulently opened financial accounts with Plaintiff's PII.

58.     Moreover, due to Plaintiff's education and experience in the field of information technology and data security, in 2015 during an interaction with one of Defendants' customer service representatives, Plaintiff discovered that American HomePatient was using computers running Microsoft's Windows XP operating system. Although Microsoft ceased providing updates for Windows XP on April 8, 2014,[9] Defendants continued utilizing Microsoft's Windows XP operating system into 2015; however, despite Plaintiff imploring Defendants' IT security officer to address the obvious vulnerabilities in Defendants' computer system, Plaintiff's concerns went unaddressed, and Defendants' inaction and refusal to implement even basic data encryption permitted the Data Disclosure to occur.

59.     As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting Data Disclosure, Plaintiff and Class members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Disclosure reach on their lives including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing

---

[9]   Microsoft, *Support for Windows XP ended*, https://www.microsoft.com/en-us/windowsforbusiness/end-of-xp-support (last visited August 31, 2018).

and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured.

60. In all manners of life in this country, time has constantly been recognized as compensable, for many people it is the way they are compensated. Plaintiff and Class members should be free of having to deal with the consequences of Defendants' slippage.

61. The injuries to the Plaintiff and Class members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for their customers/patients' PII.

## CLASS ACTION ALLEGATIONS

62. Plaintiff brings this suit as a class action on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

63. The Nationwide Class that Plaintiff seeks to represent is defined as follows:

> Defendants' current and former customers/patients whose PII was compromised as a result of the Data Disclosure which occurred on or about January 6, 2017.

64. In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiff seeks to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above. Specifically, the state class consists of the following:

> Defendants' current and former customers/patients who currently reside in the United States and whose Personal Information was compromised as a result of the Data Disclosure which occurred on or about January 6, 2017.

65. Excluded from the Classes are the officers, directors, and legal representatives of Defendants, and the judges and court personnel in this case and any members of their immediate

families.

66.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, it is estimated to be at or above 13,000. The exact number is generally ascertainable by appropriate discovery as Defendants have knowledge of the customers/patients whose PII was in the data file it disclosed.

67.     <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a.  Whether and to what extent Defendants had a duty to protect the PII of Class members;

    b.  Whether Defendants had respective duties not to disclose the PII of Class Members to unauthorized third parties;

    c.  Whether Defendants had respective duties not to use the PII of Class Members for non-business purposes;

    d.  Whether Defendants failed to adequately safeguard the PII of Class members;

    e.  Whether Defendants adequately, promptly, and accurately informed Class Members that their PII had been compromised;

    f.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Disclosure;

    g.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Class members;

h. Whether Class members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendants' wrongful conduct;

l. Whether Plaintiff and the members of the Class are entitled to restitution as a result of Defendants' wrongful conduct; and,

m. Whether Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Disclosure.

68. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other class member, was disclosed by Defendants. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendants. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class members arise from the same operative facts and are based on the same legal theories.

69. <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages he has suffered are typical of other Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

70. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the

controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

71.     The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

72.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

73.     Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

18

74.     Unless a Class-wide injunction is issued, Defendants may continue in their failure to properly secure the PII of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Disclosure, and Defendants may continue to act unlawfully as set forth in this Complaint.

75.     Further, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

76.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.      Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and safeguarding their PII;

b.      Whether Defendants breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and safeguarding their PII;

c.      Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.      Whether an implied contract existed between Defendants and the Class and the terms of that implied contract;

e.      Whether Defendants breached the implied contract;

f.      Whether Defendants adequately, and accurately informed Class Members that their PII had been compromised;

g.     Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Disclosure;

h.     Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Class Members; and,

i.     Whether Class Members are entitled to actual damages, statutory damages, injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

77.     Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

78.     As a condition of their utilizing the services of Defendants, customers/patients were obligated to provide Defendants with certain PII, including their date of birth, mailing addresses, Social Security numbers, and personal medical information.

79.     Plaintiff and the Class Members entrusted their PII to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

80.     Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

81.     Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their customers/patients' PII involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the

20

criminal acts of a third party.

82.     Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendants' security protocols to ensure that Plaintiff and Class members' information in Defendants' possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained on security measures regarding the security of customers/patients' personal and medical information.

83.     Plaintiff and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew of should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, the necessity for encrypting PII stored on Defendants' systems, and that they had inadequate employee training and education and IT security protocols in place to secure the PII of Plaintiff and the Class.

84.     Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Disclosure as set forth herein. Defendants' misconduct also included their decisions not to comply with industry standards for the safekeeping and encrypted authorized disclosure of the PII of Plaintiff and Class Members.

85.     Plaintiff and the Class Members had no ability to protect their PII that was in Defendants' possession.

86.     Defendants were in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Disclosure.

87.     Defendants had and continue to have a duty to adequately disclose that the PII of Plaintiff and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of information that were compromised and when. Such notice was necessary to allow Plaintiff and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

88.     Defendants had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and Class Members.

89.     Defendants have admitted that the PII of Plaintiff and Class Members was wrongfully disclosed to unauthorized third persons as a result of the Data Disclosure.

90.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding the PII of Plaintiff and Class Members during the time the PII was within Defendants' possession or control.

91.     Defendants improperly and inadequately safeguarded the PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Disclosure.

92.     Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect customers/patients' PII in the face of increased risk of theft.

93.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of their customers/patients' PII.

94.     Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of

the Data Disclosure.

95.     But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

96.     There is a close causal connection between Defendants' failure to implement security measures to protect the PII of current and former customers/patients and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class.

97.     As a result of Defendants' negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: identity theft, out-of-pocket expenses associated with addressing false accounts opened; out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Disclosure.

## SECOND CAUSE OF ACTION
### Invasion of Privacy
### (On Behalf of the Class)
### (Against American HomePatient, Inc., and Lincare Holdings, Inc.)

98.     Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

99.     Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

100.    Defendants owed a duty to their customers/patients, including Plaintiff and Class Members, to keep their PII contained as a part thereof, confidential.

101.    Defendants failed to protect and released to unknown and unauthorized third parties unencrypted computer hard drives containing the PII of Plaintiff and Class Members.

102.    Defendants allowed unauthorized and unknown third parties unfettered access to and examination of the PII of Plaintiff and Class Members, by way of Defendants' failure to protect the PII on the hard drives with even basic encryption technology.

103.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members, especially where the information includes Social Security numbers and dates of birth, is highly offensive to a reasonable person.

104.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendants as part of their use of Defendants' services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

105.    The Data Disclosure at the hands of Defendants constitutes an intentional interference with Plaintiff and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

106.    As a proximate result of the above acts and omissions of Defendants, the PII of Plaintiff and Class Members was disclosed to and used by third parties without authorization, causing Plaintiff and Class Members to suffer damages.

107.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class

Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

108.    Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

109.    Plaintiff and Class members were required to provide their PII, including names, addresses, Social Security numbers, dates of birth, and other personal information, to Defendants as a condition of their use of Defendants' services.

110.    Implicit in the agreement between the Defendants and their customers/patients was the obligation that Defendants would use the PII of their customers/patients for business purposes only and not make unauthorized disclosures of the information.

111.    Defendants had an implied duty to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure or uses.

112.    Additionally, Defendants implicitly promised to retain this PII only under conditions that kept such information secure and confidential.

113.    Plaintiff and Class members fully performed their obligations under the implied contract with Defendants; however, Defendants did not.

114.    Defendants breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiff and Class members' PII, which was

compromised as a result of the Data Disclosure.

115.    As a direct and proximate result of Defendants breach of their implied contracts with Plaintiff and Class members, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers/patients and former customers/patients in their continued possession; and, (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Disclosure for the remainder of the lives of Plaintiff and Class members.

**FOURTH CAUSE OF ACTION**
**Negligence Per Se**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

116.    Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

117.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by

businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

118.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, such as encryption of data and those others described herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored, and the foreseeable consequences of a Data Disclosure for companies of Defendants' magnitude, including, specifically, the immense damages that would result to Plaintiff and Class members.

119.    Defendants' violations of Section 5 of the FTC Act constitute negligence *per se*.

120.    Plaintiff and Class members are within the class of persons that the FTC Act was intended to protect.

121.    The harm that occurred as a result of the Data Disclosure is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class members.

122.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and

future consequences of the Data Disclosure, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (v) costs associated with placing freezes on credit reports; (vi) the continued risk to their PII, which remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII of customers/patients and former customers/patients in their continued possession; and, (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Disclosure for the remainder of the lives of Plaintiff and Class members.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

123.    Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

124.    Plaintiff and Class members conferred a monetary benefit on Defendants. Specifically, they purchased goods and services from Defendants and provided Defendants with their PII. In exchange, Plaintiff and Class members should have received from Defendants the goods and services that were the subject of the transaction and should have been entitled to have Defendants protect their PII with adequate data security.

125.    Defendants knew that Plaintiff and Class members conferred a benefit on Defendants and accepted and have accepted or retained that benefit. Defendants profited from the purchases and used the PII of Plaintiff and Class members for business purposes.

126.    Defendants failed to secure the PII of Plaintiff and Class members and, therefore,

did not provide full compensation for the benefit Plaintiff and Class members provided.

127.    Defendants acquired the PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

128.    If Plaintiff and Class members knew that Defendants would not secure their PII using adequate security, they would not have made purchases with Defendants.

129.    Plaintiff and Class members have no adequate remedy at law.

130.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class members conferred on them.

131.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that they unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class members overpaid for Defendants goods and services.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

132.    Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

133.    In light of the special relationship between Defendants and their customers/patients, whereby Defendants required Plaintiff and Class Members to provide highly sensitive, confidential, personal, and financial information as a condition of their use of Defendants' services, Defendants were fiduciaries, created by their undertaking, to act primarily for the benefit of their customers/patients, including Plaintiff and Class members, for the safeguarding of customers/patients' PII.

29

134.   Defendants had a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their customers/patients' relationship, in particular to keep secure the PII of their customers/patients.

135.   Defendants breached their duty of care to Plaintiff and Class members to ensure that their PII data was not disclosed without authorization or used for improper purposes by failing to provide adequate protections to the information and by disclosing the information, in an unencrypted format, to an unknown and unauthorized third party.

136.   As a direct and proximate result of the Defendants actions alleged above, the Plaintiff and Class members have suffered actual damages.

**SEVENTH CAUSE OF ACTION**
**Violation of State Unfair and Deceptive Trade Practices Acts**
**(On Behalf of the Class)**
**(Against American HomePatient, Inc., and Lincare Holdings, Inc.)**

137.   Plaintiff restates and realleges paragraphs 1 through 76 above as if fully set forth herein.

138.   Plaintiff and the Class members are consumers who purchased products and services from Defendants. These purchases were made primarily for personal, family, health-related, or household purposes.

139.   Defendants engaged in the conduct alleged in this Complaint entering into transactions intended to result, and which did result, in the sale of products and services to consumers, including Plaintiff and the Class members.

140.   Defendants engaged in, and their acts and omissions affected trade and commerce. Defendants' acts, practices, and omissions were done in the course of Defendants'

business of marketing, offering to sell, and selling products and services throughout the United States.

141.    Defendants, headquartered and operating in Florida, engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204(1), including but not limited to the following:

    a.    failure to maintain adequate computer systems and data security practices to safeguard PII;

    b.    failure to disclose that its computer systems and data security practices were inadequate to safeguard PII from theft;

    c.    failure to timely and accurately disclose the Data Disclosure to Plaintiff and the Class Members;

    d.    continued acceptance of credit and debit card payments and storage of other personal information after Defendants knew or should have known of the Data Disclosure and before it allegedly remediated the Data Disclosure.

142.    These unfair acts and practices violated duties imposed by laws including but not limited to the FTCA and Fla. Stat. § 501.171(2).

143.    As a direct and proximate result of Defendants' violation of the Florida Unfair and Deceptive Trade Practices Act, Plaintiff and the Class members suffered damages including, but not limited to:.

144.    Also as a direct result of Defendants' knowing violation of the Florida Unfair and Deceptive Trade Practices Act, Plaintiff and the Class members are entitled to damages as well as injunctive relief, including, but not limited to:

    a.    Ordering that Defendants engage third-party security auditors/penetration testers

as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

b.  Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

c.  Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

d.  Ordering that Defendants segment PII by, among other things, creating firewalls and access controls so that if one area of Defendants is compromised, hackers cannot gain access to other portions of Defendants' systems;

e.  Ordering that Defendants purge, delete, and destroy in a reasonable secure manner PII not necessary for its provisions of services;

f.  Ordering that Defendants conduct regular database scanning and securing checks;

g.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  Ordering Defendants to meaningfully educate its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Defendants' customers must take to protect themselves.

145.   Plaintiff brings this action on behalf of himself and the Class Members for the relief requested above and for the public benefit in order to promote the public interests in the

provision of truthful, fair information to allow consumers to make informed purchasing decisions and to protect Plaintiff and the Class members and the public from Defendants' unfair methods of competition and unfair, deceptive, fraudulent, unconscionable, and unlawful practices. Defendants' wrongful conduct as alleged in this Complaint has had widespread impact on the public at large.

146.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and the Class members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

147.    Defendants knew or should have known that the lack of encryption on their computer systems and data security practices were inadequate to safeguard the Class Members' PII and that the risk of a data disclosure or theft was high.

148.    Defendants' actions and inactions in engaging in the unfair practices and deceptive acts described herein were negligent, knowing and willful, and/or wanton and reckless.

149.    Plaintiff and the Class Members seek relief under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq, including, but not limited to, damages, injunctive relief, and attorneys' fees and costs, and any other just and proper relief.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff on behalf of himself and all others similarly situated, pray for relief as follows:

a. For an Order certifying the Class as defined herein, and appointing Plaintiff and his Counsel to represent the Class;

b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class members' PII, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiff and Class members;

c. For equitable relief compelling Defendants to use appropriate cyber security methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class members the type of PII compromised;

d. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

e. For an award of punitive damages;

f. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

g. For prejudgment interest on all amounts awarded; and

h. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury on all issues so triable.

Dated: September 24, 2018                    Respectfully submitted,

/s /John A. Yanchunis

JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

CHARLIE SCHAFFER*
CSchaffer@lfsblaw.com
DANIEL C. LEVIN*
DLevin@lfsblaw.com
LEVIN SEDRAN BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

**Attorneys for Plaintiff and the Proposed Class**

*pro hac vice* application to be submitted