UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOSEPH KUSS, individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>v.<br><br>AMERICAN HOMEPATIENT, INC., and LINCARE HOLDINGS, INC.<br><br>                       Defendants. | Case No.: 8:18-cv-02348-EAK-TGW<br><br>**Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class** |

Plaintiff, JOSEPH KUSS ("Plaintiff" or "Class Representative"), respectfully moves for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I.  INTRODUCTION

On January 6, 2017, American HomePatient Inc.'s ("AHP") office in Newark, Delaware was burglarized. AHP is a wholly-owned subsidiary of Lincare Holdings, Inc. ("LHI") (collectively, "Defendants"). The burglar(s) stole five unencrypted computer hard drives potentially containing sensitive and private protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information (collectively, "PII") of up to 13,701 customers/patients of AHP. ("Security Incident").

This case does not involve a breach of a computer system by a third party, but rather the potential unauthorized disclosure of the PII of Plaintiff and Class Members by the Defendants to unknown third parties. As a result of Defendants' alleged failure to implement security procedures—such as, at a minimum, encrypting Plaintiff's and Class Members' PII—Plaintiff's

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is being filed concurrently herewith.

and Class Members' PII has now possibly been compromised and may be in the hands of unauthorized third parties. Plaintiff and Class Members allege that they now face a substantial increased risk of identity theft; in fact, Plaintiff alleges that he has already fallen victim to multiple instances of identity theft since the Security Incident. Consequently, AHP's current and former customers have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to Defendants' alleged basic failures.

Plaintiff alleges that Defendants expressly represented they would "maintain the privacy of [Plaintiff's and Class Members'] protected health information;" "abide by the terms of the Notice of Privacy Practices" (with an effective date of June 24, 2013), and has not been updated since; and "obtain [Plaintiff's and Class Members'] written authorization to use or disclose [their] health information for reasons other than those identified in [the Notice of Privacy Practices] and permitted by law."

The proposed Settlement was reached following a day-long mediation conducted by Steve R. Jaffe of Upchurch Watson White & Max Meditation Group, on May 10, 2019. The parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were proposed and negotiated between them beginning at the mediation with Mr. Jaffe and finalized by the parties in the weeks following. Pursuant to the terms of the Settlement Agreement and Release, which are set forth fully below, and is attached hereto as **Exhibit 1** ("Settlement Agreement" or "SA"), this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendants and the Released Parties  (as defined below) relating to the Security Incident, by and on behalf of the Settlement Class Representative Plaintiff and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate,

in jurisdictions in the United States against Defendants relating to the Security Incident.

Defendants will provide the following relief as part of the Settlement, as described in further detail below: (1) Extended Identity Theft Protection; (2) Reimbursement for Self-Paid Identity Theft Protection; (3) Payment for False or Fraudulent Tax Returns; (4) Payment for IRS Tax Transcript Requests; (5) Payment for Eligible Incident Claims; (6) Payment for Out of-Pocket Losses; (7) Non-Monetary Relief, which includes AHP's adoption and maintenance of certain Enhanced Data Security Measures; and (8) Additional Class Benefits, which include Defendants' agreement to pay, separately from and in addition to all other consideration and relief provided or offered by Defendants as part of the Settlement, the costs of administration of the Settlement and Class Notice, any Service Award approved for or awarded to the Settlement Class Representative, and any Fee and Expense Award approved for or awarded to Lead and Settlement Class Counsel. The Agreement offers complete recovery and is an excellent result for the members of the class.

For the reasons stated below, Plaintiff respectfully requests that the Court grant an order: (1) preliminarily approving the proposed settlement; (2) provisionally certifying the Settlement Class; (3) appointing Joseph Kuss as Settlement Class Representative; (4) appointing John Yanchunis as Lead Settlement Class Counsel; (5) appointing Ryan McGee, Charley Shaffer, and Dan Levin as Settlement Class Counsel; (6) approving the proposed Notice Program and authorizing its dissemination to the Class; (7) appointing Epiq Systems, Inc. ("Epiq"), to serve as the Claims Administrator; and (8) setting a schedule for the final approval process including Lead and Settlement Class Counsel's motion for attorneys' fees and expenses.

## A.  SUMMARY OF THE LITIGATION

This class action case was filed against Defendants in September 2018 following Defendants' alleged unauthorized disclosure of Plaintiff's and Class Members' PII to unauthorized

third parties. As a result of Defendants' alleged failure to implement and follow basic security procedures—such as, at a minimum, encrypting Plaintiff's and Class Members' PII—Plaintiff's and Class Members' PII has now potentially been provided to unauthorized third parties. Amended Complaint, Doc. No. 24, ¶ 3 (the "Am. Compl."). Plaintiff, Joseph Kuss, asserted eight claims in his complaint: negligence, invasion of privacy, breach of implied contract, negligence per se, unjust enrichment, breach of fiduciary duty, violations of Florida's Unfair and Deceptive Trade Practices Act, and breach of confidence. Am. Compl., ¶¶ 133–272.

On November 5, 2018, Defendants moved to dismiss the complaint in its entirety (the "Motion to Dismiss"). (Doc. 21). Subsequently, on November 19, 2017, and before responding to the Motion to Dismiss, Plaintiff filed his First Amended Class Action Complaint (the "Amended Complaint"). (Doc. 24). Plaintiff's filing of the Amended Complaint mooted the pending Motion to Dismiss. On December 19, 2018, Defendants moved to dismiss the Amended Complaint in its entirety again (the "Second Motion to Dismiss") (Doc. 29), and on January 25, 2019, Plaintiff responded to that motion (Doc. 32). Before the Court could rule on Defendants' pending Second Motion to Dismiss, the parties agreed to mediate the case before an independent mediator (Doc. 37). During the pendency of the Second Motion to Dismiss, the parties exchanged substantial written discovery, Lead and Settlement Class Counsel took the deposition of a witness Defendants designated pursuant to Plaintiff's Rule 30(b)(6) notice concerning, *inter alia*, Defendants' security practices, Lead and Settlement Class Counsel took the deposition of Defendants' head privacy officer, and Defendants took the deposition of Plaintiff.

## B.  INFORMATION ABOUT THE SETTLEMENT

The parties agreed on and retained Steve R. Jaffe, a highly experienced mediator, to assist the parties in settlement negotiations. Declaration of John A. Yanchunis, attached as **Exhibit 2**

("Yanch. Decl."), ¶ 14; Declaration of Ryan J. McGee, attached as **Exhibit 3** ("McGee Decl."), ¶ 11. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation. The parties also submitted a draft settlement term sheet that was prepared by Plaintiff and that was then used at the mediation. Yanch. Decl., ¶ 14, 15; McGee Decl., ¶ 12.

On May 10, 2019, the parties had a full-day mediation session with Mr. Jaffe, exceeding nine hours. Yanch. Decl., ¶ 14; McGee Decl., ¶ 11. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. Yanch. Decl., ¶ 15; McGee Decl., ¶ 12. Through the negotiations, Mr. Jaffe was able to assist the parties in reaching an agreement on the substantive terms of the Settlement. Yanch. Decl., ¶ 15; McGee Decl., ¶ 12. The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. Yanch. Decl., ¶ 16; McGee Decl., ¶ 13.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with other data breach cases, and the information provided by Defendants, Plaintiff's counsel has determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

## C.  THE TERMS OF THE SETTLEMENT AGREEMENT

### 1.  The Settlement Class

The proposed Settlement Class is defined as:

> All individuals in the United States who are current or former patients or customers of Defendants, whose PII was stored on the unencrypted hard drives stolen from Defendants' Newark, Delaware

location on or about January 6, 2017, and who suffered injury or harm resulting from the dissemination of their PII.

Excluded from the Settlement Class is the judge presiding over this matter and any members of her judicial staff, the officers and directors of either of the Defendants, and persons who timely and validly request exclusion from the Settlement Class.

## 2.  The Settlement Benefits

### a.  Monetary Remedies

Under the Settlement, subject to its terms and conditions and subject to Court approval, Settlement Class Members are eligible to receive substantial relief and reimbursement for the following categories of out-pocket expenses resulting from the Security Incident:

1. Extended identity theft protection for an additional 24 months and insurance for ID theft reimbursement up to $25,000;
2. Reimbursement of self-paid identity theft protection;
3. Payment for false or fraudulent tax returns;
4. Payment for IRS tax transcript requests;
5. Eligible incident claims; and
6. Out-of-Pocket losses;

SA, § V.34(a)–(f).

The aggregate amount of total potential claims reimbursement under the Settlement Agreement, § 34 ($1,000,000.00), attorneys' fees, costs, and expenses under the Settlement Agreement, § XII.61 ($325,000.00), and service award to the Representative Plaintiff under the Settlement Agreement § XII.60 ($5,000.00), for which Defendants shall be responsible to pay is capped at $1,330,000.00.  Following expiration of the Claims Deadline and after the Settlement Administrator determines which Claims are valid and permissible, and the amounts properly payable for such Claims, Defendants shall provide to the Settlement Administrator all funds necessary to pay the valid and permissible claims, subject to the applicable caps and other provisions of the Settlement Agreement. Defendants shall be obligated to reimburse only those claims that are actually made by Settlement Class Members and approved by the Settlement

Administrator. Importantly, unredeemed and uncashed claims checks shall be awarded to The American Lung Association or to any other recipient selected by this Court. The categories (2 through 6 above) of recovery are capped as follows: (1) reimbursement for self-paid identity theft protection: up to $150.00 per claimant, not to exceed $250,000.00 in the aggregate, SA, § V.34(b); (2) payment for false or fraudulent tax returns: a single payment of $350.00 per claimant, not to exceed $250,000.00 in the aggregate, SA, § V.34(c); (3) payment for IRS tax transcript requests: up to $150.00 per claimant, not to exceed $150,000.00 in the aggregate, SA, § V.34(d); (4) eligible incident claims: a single payment of $250.00 per claimant, not to exceed $150,000.00 in the aggregate, SA, § V.34(e); and (5) out-of-pocket losses: up to $500.00 per claimant, not to exceed $200,000.00 in the aggregate, SA, § V.34(f). If the total amount of valid claims submitted above exceed these respective caps, each individual claim amount shall be reduced in a pro rata amount. SA, § V.34(b)–(f).

### b.  Injunctive Relief

In addition to the monetary compensation provided to class members by the Settlement Agreement, Defendants have implemented, and/or have agreed to implement, and agree to maintain enhanced security measures, including performance of an external HIPAA risk assessment at least every two years, maintenance of a Head of Information Technology, and training and/or guidance to educate Defendants' workforce on an annual basis concerning information security issues, privacy awareness, and the importance of encrypting PII. Additionally, because Defendants already have adopted encryption and other practices to secure Plaintiff's and its customers' information, no further injunctive relief is sought in this case.

Thus, through both the opportunity to receive direct monetary payments from Defendants in amounts up to $1,400.00, the ability to enroll in two additional years of identity theft protection,

and Defendants' enhanced information security posture resulting from this litigation, Settlement Class Members benefit by the proposed Settlement Agreement in a substantive and substantially meaningful way.

### 3. Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose Epiq to be appointed as Notice Specialist and Claims Administrator. Epiq is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and Epiq believe is an effective program.

Subject to Court approval, this Notice Program involves direct notice to the approximately 13,701 Settlement Class Members for whom physical addresses or email addresses are available. For the remaining Settlement Class Members, notice will be provided through the Settlement Website and Telephone Hotline. A declaration from Mr. Cameron Azari with additional details about the Notice Program is attached hereto as **Exhibit 4**.

Finally, Epiq will also establish a settlement website in the form agreed to by the parties and the Court. The parties respectfully and specifically request the URL http://www.AHOMSettlement.com ("Settlement Website") be so designated. In addition to the notices, the website will include information about the Settlement, related case documents, and the Settlement Agreement. Settlement Class Members will be able to submit claims electronically.

Notice of the Settlement will be given to the Settlement Class no later than thirty (30) days from the date of the Court's Preliminary Approval Order, a proposed draft of which is attached to the Settlement Agreement as Exhibit E (hereinafter, "1-E"). Pursuant to the Notice Program, there will be two forms of notice, a Postcard Notice and Long Form Notice, which are attached as Exhibits B and C to the Settlement Agreement, respectively (hereinafter "1-B" and "1-C"). The

Notices inform Settlement Class Members of the nature of the action, the litigation background, the terms of the agreement (including the definition of the Settlement Class), the relief provided by the Settlement Agreement, Lead and Settlement Class Counsel's request for fees and expenses, and the scope of the release and the binding nature of the Settlement on Settlement Class Members. The notices also describe the procedure for objecting to the Settlement; advise Settlement Class Members that they have the right to opt out of the Settlement and describes the consequences for opting out; and state the date and time of the final approval hearing, advising that the date may change and how to check the Settlement Website.

Defendants agree to pay all costs associated with providing Class notice and administering the Settlement benefits. Such payment will be in addition to and not affect the amount of Class Settlement consideration available to Settlement Class Members. SA, §§ 34, 44, 52.

### 4.  Exclusion and Objection Procedures

The Notice Program will advise Settlement Class Members of their rights to object or opt out of the Settlement and direct Settlement Class Members to the Settlement Website for more information. The Long-Form Notice (available on the Settlement Website) provides instructions for Settlement Class Members to exclude themselves from the Settlement Class. The Long-Form Notice also provides instructions for Settlement Class Members to object to the Settlement and/or to Plaintiff's Counsel's application for attorneys' fees, costs, and expenses. SA, §§ 12, 45–52.

### 5.  Attorneys' Fees, Costs, and Expenses

Defendants have agreed that Lead and Settlement Class Counsel is entitled to seek an award of reasonable attorneys' fees and expenses for prosecuting this action and will not object to Lead and Settlement Class Counsel's petition for fees and expenses not to exceed $325,000 inclusive of costs and expenses. Notably, the parties did not negotiate this agreement or any other

issue with respect to attorneys' fees, costs, and expenses until the mediator had informed the parties that they had reached an agreement on Class relief. In addition, the award of fees costs and expenses does not reduce or otherwise affect the amount of compensation available to Settlement Class Members. Lead and Settlement Class Counsel's lodestar substantially exceeds the attorneys' fees request, which will be presented to the Court in their motion for attorneys' fees, costs, and expenses. This motion will be filed at least thirty (30) days prior to the deadline for objecting to the proposed settlement.

### 6. Service Award

The Settlement allows Lead and Settlement Class Counsel to request and for Defendants to pay a service award to Joseph Kuss, Plaintiff and the proposed Settlement Class Representative, in an amount not to exceed $5,000.00 as approved and ordered by the Court upon final approval of the Settlement. The Settlement Class Representative's agreement to the Settlement is not conditioned in any manner on the award of a service award or its amount. Yanch. Decl., 19. The Class Representative has given his time and accepted his responsibilities admirably, participating actively in this litigation as required and in a manner beneficial to the Class generally, including: (1) reviewing the Complaint and Amended Complaint; (2) responding to voluminous discovery including document requests of a particularly sensitive nature; (3) traveling from Delaware for his deposition; and (4) remaining available during the entirety of the mediation in the event the parties were able to reach amicable resolution. Yanch. Decl., ¶ 10; McGee Decl., ¶ 7.

### 7. Release of Claims

Under the Settlement Agreement, each Settlement Class Member will be deemed to have released any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or that might have

been asserted, by the Plaintiff or any Settlement Class Member, against Defendants relating to the Security Incident that were or could have been alleged in the litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure, or disclosure of Class Members' PII; (2) Defendants' maintenance, retention, storage, and destruction of Class Members' PII; (3) Defendants' information security policies, procedures, and practices or training; and (4) Defendants' notice of the Security Incident to Class Members. SA, §§ 56–59.

## II. ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

A court in a sister district has stated that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification

issue.'" *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a.  Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendants identified in discovery approximately 13,701 people in the putative class. Thus, the numerosity requirement is easily satisfied.

#### b.  Commonality.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation

omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. In this case, the Settlement Class Members are joined by the common questions of law and fact that arise from the same event—the Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff has alleged that the following questions of fact and law are common to the Class:

    a.  Whether and to what extent Defendants had a duty to protect the PII of Class Members;

    b.  Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' PII;

    c.  Whether Defendants had respective duties not to disclose the PII of Class Members to unauthorized third parties;

    d.  Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

    e.  Whether Defendants failed to adequately safeguard the PII of Class Members;

    f.  Whether Defendants breached their duties to exercise reasonable care in handling

Plaintiff's and Class Members' PII by storing that information on computers and hard drives in the manner alleged herein, including unencrypted form and/or failing to comply with industry standards;

g. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Security Incident;

h. Whether storing PII in an unencrypted format was reasonable under industry standards;

i. Whether implied or express contracts existed between Defendants, on the one hand, and Plaintiff and Class Members on the other;

j. Whether Defendants had respective duties not to use the PII of Class Members for non-business purposes;

k. Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

l. Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Class Members;

m. Whether Defendants' conduct violates Florida Statute Section 468.365(e);

n. Whether Defendants' conduct violates Florida Statute Section 468.365(s);

o. Whether Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendants' wrongful conduct;

p. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and,

q. Whether Class Members are entitled to injunctive relief to redress the imminent

and currently ongoing harm faced as a result of the Security Incident.

These common issues all center on Defendants' conduct, satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement. Specifically, Plaintiff's claims are typical of those of other Class members because they arise from the same Security Incident. They are also based on

the same legal theory, i.e., that Defendants had a legal duty to protect Plaintiff's and class members' PII. Because there is a "sufficient nexus" between the Plaintiff's claims and the claims of Settlement Class Members, the typicality requirement is satisfied. *Hines*, 334 F.3d at 1256.

### d.   Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At the preliminary stage of the approval process, there is nothing to suggest that this requirement has not been satisfied. The Class Representative is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. He provided his PII to Defendants and alleges his PII was compromised as a result of the Security Incident, as the PII of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. Because of this, Plaintiff has vigorously prosecuted this case for the benefit of all Settlement Class Members. Plaintiff has participated in the litigation, reviewed pleadings, answered discovery, and sat for his deposition.

In addition, proposed Lead and Settlement Class Counsel are experienced in class action litigation, and have submitted declarations establishing their skills and experience in handling class litigation around the country and in this District. Yanch. Decl., ¶¶ 4-5. Because Plaintiff and his counsel have devoted considerable time and resources to this litigation, the adequacy requirement is satisfied.

### 2.   The Predominance and Superiority Requirements of Rule 23(b)(3) Are Met.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must

also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."). Predominance does not require that all questions of law or fact be common, but

rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, 123–124 (3d ed. 2005)).

Common issues readily predominate here because the central liability question in this case—whether Defendants failed to safeguard Plaintiff's information, like that of every other Class member—can be established through generalized evidence. *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met."). Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiff and Settlement Class Members and whether Defendants breached that duty. The many common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues. Other courts have recognized that these types of common issues arising from a data breach predominate over individualized issues. *See, e.g., Countrywide*, 2009 WL 5184352, at *6-7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' personal information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the data breach, and the resulting injury

to each class member from that conduct").

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1359 (11th Cir. 2002)). Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class. As noted earlier, any perceived difficulties managing the Settlement Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302–03 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification

of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class). A class action settlement is superior to other means of resolution because a settlement affording Settlement Class Members an opportunity to receive compensation benefits *all* parties.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled, pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems. . . .").

The Court respectfully should certify the Settlement Class, as the superiority requirement is satisfied, along with all other Rule 23 requirements.

**B. Plaintiff's Counsel Should Be Appointed as Lead and Settlement Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Mr. Yanchunis' Declaration, proposed Lead and Settlement Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Further, proposed Lead and Settlement Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation and litigation of those claims, and have successfully negotiated the Settlement of this matter to the benefit of Plaintiff and the Settlement Class. *Id*. Accordingly, the Court should appoint John Allen Yanchunis, Sr., as Lead Settlement Class Counsel, and Ryan J. McGee, Charlie Schaffer, and Dan Levin as Settlement Class Counsel.

**C. The Settlement Is Fair, Reasonable, and Adequate.**

After determining that a proposed settlement class is appropriate for certification, courts consider whether the proposed settlement itself warrants preliminary approval. Under Rule 23(e), "the Court will approve a class action settlement if it is 'fair, reasonable, and adequate.'" *Burrows*, 2013 WL 10167232, at \*5 (quoting Fed. R. Civ. P. 23(e)(2)). The procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible

approval." *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Moreover, settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Further, it must be noted there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transp.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain). Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the parties. *Warren*, 693 F. Supp. at 1054 (affording "great weight to the recommendations of counsel for both parties, given their

considerable experience in this type of litigation").

Here, there should be no question that the proposed Settlement is "within the range of possible approval." To start, the process used to reach the Settlement was exceedingly fair. That is, the Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases. As discussed above, the parties engaged in formal in-person mediation with an experienced and respected mediator, Steve R. Jaffe. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318–19.

Given the various forms of relief offered under the Settlement, coupled with the robust Notice Program, Lead and Settlement Class Counsel believe the results achieved are well within the range of possible approval. Nevertheless, and despite the strength of the Settlement, Plaintiff and Lead and Settlement Class Counsel are pragmatic in their awareness of the various defenses available to Defendants, as well as the risks inherent to continued litigation. Defendants have consistently denied the allegations raised by Plaintiff and made clear at the outset that they would vigorously defend this case.

### D.  The Proposed Class Notice Satisfies Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

*Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The Notice Program here satisfies all of these criteria and is designed to provide the best notice practicable. Foremost, the Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Lead and Settlement Class Counsel's Fee Application and the Class Representative's Service Award, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). Additionally, the Notice Program is comprised of: (1) direct-mail postcard notice; (2) an advertised telephone hotline; and (3) notice posted to the Settlement Website, providing both direct and electronic notice. SA, § 14.

The form of the Order Preliminarily Approval Order, Exhibit 1-E, has been drafted and approved by counsel for Plaintiff and counsel for Defendants. The proposed claims forms, Exhibits 1-B and 1-C, likewise satisfy all of the above criteria. The Notice Program provides for direct, individual notice via U.S. Mail. Skip tracing will be performed for returned mail and direct mail notice as needed. Also, notice will be provided to Settlement Class Members online through the dedicated Settlement Website that Epiq will maintain, which will satisfy due process and is presented to the Court as set forth in the Declaration of Cameron Azari. **Ex. 4**. Finally, Defendants will provide the notification required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the

Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials.

Therefore, the Notice and Notice Program satisfy all applicable requirements of the law, including, but not limited to, Rule 23 of the Federal Rules of Civil Procedure and Due Process. The Court should therefore approve the Notice Program and the form and content of the claim form and Notices attached hereto as Exhibits 1-A, 1-B, and 1-C.

### E.  The Court Should Schedule a Final Approval Hearing.

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter the Final Approval Order under Rule 23(e); and whether to approve Lead and Settlement Class Counsel's motion for fees and expenses, and request for a Service Award for the Settlement Class Representative. Plaintiff and Lead and Settlement Class Counsel request that the Court schedule the Final Approval Hearing at a date convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Lead and Settlement Class Counsel will file the motion for Final Approval no later than 30 days after the Notice Deadline.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order: (1) certifying, for settlement purposes, the proposed Settlement Class, pursuant to Rules 23(a), (b)(3) and (e) of the Federal Rules of Civil Procedure; (2) granting Preliminary Approval of the Settlement; (3) approving the Notice Program set forth in the Settlement and the form and content of the claim form and Notices attached as Exhibits 1-A, 1-B, and 1-C hereto; (4) approving and

ordering the opt-out and objection procedures set forth in the Settlement; (5) appointing Plaintiff Joseph Kuss as Settlement Class Representative; (6) appointing John A. Yanchunis, Sr., as Lead Counsel and Ryan J. McGee, Charlie Schaffer, and Dan Levin as Class Counsel; (7) staying all proceedings in this litigation unrelated to the Settlement, pending Final Approval; and (8) scheduling a Final Approval Hearing at a date convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. A Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached as Exhibit E to the Settlement Agreement.

Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement of this case. In the event the Settlement is not approved, the Settlement Agreement is terminated for any reason, or the Effective Date, as defined in the Settlement Agreement, does not occur for any reason, Defendants reserve all defenses in the case and specifically reserve the right to object to this case proceeding on a class-wide basis for any purpose.

Dated: November 8, 2019                                     Respectfully submitted,

                                                            */s/ John A. Yanchunis*
                                                            JOHN A. YANCHUNIS
                                                            jyanchunis@ForThePeople.com
                                                            RYAN J. MCGEE
                                                            rmcgee@ForThePeople.com
                                                            **MORGAN & MORGAN**
                                                            **COMPLEX LITIGATION**
                                                            **GROUP**
                                                            201 N. Franklin Street, 7th Floor
                                                            Tampa, Florida 33602
                                                            Telephone: (813) 223-5505
                                                            Facsimile: (813) 223-5402

                                                            CHARLIE SCHAFFER
                                                            CSchaffer@lfsblaw.com
                                                            DANIEL C. LEVIN
                                                            DLevin@lfsblaw.com
                                                            **LEVIN SEDRAN BERMAN LLP**
                                                            510 Walnut Street, Suite 500
                                                            Philadelphia, PA 19106
                                                            Telephone: (215) 592-1500
                                                            Facsimile: (215) 592-4663

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2019 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                            */s/ John A. Yanchunis*