## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into on November 6, 2019, by and among the Settlement Class Representative (as defined in Paragraph 29), for himself and on behalf of the Settlement Class (as defined in Paragraphs 27 and 28), and Lincare Holdings Inc. ("Lincare") and American HomePatient, Inc. ("AHOM") subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure (Lincare and AHOM are collectively referred to herein as "Defendants"). Settlement Class Representative and Defendants enter into this agreement by and through their respective counsel. As provided herein, Defendants and Settlement Class Representative hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class Representative and the Settlement Class that have or could have been asserted against Defendants in the action titled *Joseph Kuss v. American HomePatient, Inc. and Lincare Holdings, Inc.*, Case No. 8:18-cv-02348-EAK-TGW, pending in the United States District Court for the Middle District of Florida, Tampa Division (the "Litigation"), shall be settled and compromised upon the terms and conditions contained herein. Settlement Class Representative and Defendants collectively are referred to herein as the "Parties."

## I.   RECITALS

A.   This litigation arises from a burglary (the "Burglary", as defined below) that occurred at the Newark, Delaware office location of AHOM. Specifically, on January 7, 2017, an AHOM employee discovered that AHOM's Newark office apparently had been ransacked sometime during the previous night. The employee observed that the side glass door to the office building had been shattered and that several items of office equipment appeared to be missing. The AHOM employee immediately contacted the general manager of the office, who arrived at the scene a short time later and, after reviewing the condition of the facility, notified the Newark Police Department and the landlord of the building. The police promptly launched an investigation, which included finger-printing the office and taking numerous photographs of the crime scene. The police also reviewed security camera footage from an adjacent business. To the best of Defendants' knowledge, no one was ever arrested in connection with the Burglary.

B.   AHOM soon determined that seven computer tower boxes, together with an electric leaf blower, had been taken during the Burglary. Also, five of the seven computers were not encrypted and may have contained personally identifiable information ("PII") (as defined in Paragraph 18) of AHOM's present or former patients. AHOM ultimately identified 13,709 individuals whose information conceivably might have been contained on the stolen computers.

C.   Although AHOM could not determine whether all of these individuals had PII saved locally on the stolen computer towers, AHOM nevertheless elected to notify all 13,709 of these potentially impacted individuals because it was possible that these individuals may have had PII saved locally on the stolen computer towers. AHOM hired an outside firm, Epiq Systems, Inc. ("Epiq"), to send letters to these individuals to inform them of the Burglary and to advise them that their PII, possibly including first and last name, address, AHOM account number, Social Security number, diagnosis codes, date of birth, financial information, and

treatment information, might have been exposed as a result of the Burglary.[1]  These notices were mailed on March 6, 2017.

    D.   At the same time, AHOM notified the media of the Burglary through notices placed with the Wilmington Journal, Baltimore Sun, and Philadelphia Inquirer. AHOM further notified the U.S. Department of Health and Human Services, Office of Civil Rights, of the Burglary.

    E.   AHOM made available to all potentially impacted patients one year of complimentary credit monitoring, remediation services, and identity theft insurance.  AHOM also established a call center to answer any patient questions.

    F.   On September 24, 2018, Joseph Kuss (the "Plaintiff") filed the Litigation against Defendants, asserting claims for alleged negligence, invasion of privacy, breach of implied contract, negligence per se, unjust enrichment, breach of fiduciary duty, and violation of Florida's Deceptive and Unfair Trade Practices Act.  On November 5, 2018, Defendants moved to dismiss the complaint in its entirety (the "Motion to Dismiss").  Subsequently, on November 19, 2017, and before responding to the Motion to Dismiss, Plaintiff filed his First Amended Class Action Complaint (the "Amended Complaint").  Plaintiff's filing of the Amended Complaint mooted the pending Motion to Dismiss.  On December 19, 2018, Defendants moved to dismiss the Amended Complaint in its entirety again (the "Second Motion to Dismiss"), and on January 25, 2019, Plaintiff responded to that motion.   Before the Court could rule on Defendants' pending Second Motion to Dismiss, the Parties agreed to mediate the case before an independent mediator.  The Amended Complaint was the operative pleading at the time of mediation.

    G.   Prior to the mediation, the Parties investigated the facts and law underlying the claims asserted in the Litigation through formal and informal discovery.  Plaintiff served Interrogatories and two separate Requests for Production on Defendants.  Defendants responded to the written discovery requests and produced hundreds of pages of documents to Plaintiff. Defendants also served Interrogatories and Requests for Production on Plaintiff.  Plaintiff responded to the written discovery requests and produced more than 160 pages of documents to Defendants. Plaintiff also conducted the depositions of the Defendants' corporate representatives and Lincare's head privacy officer.  Defendants conducted the deposition of Plaintiff.  The Parties also engaged in informal discovery.

    H.   On May 10, 2019, the Parties participated in a formal mediation session with mediator Steven Jaffe, Esq., of Upchurch, Watson, White & Max.  The formal mediation session lasted more than 9 hours.  Prior to the mediation, the Parties engaged in numerous telephone

---

[1] AHOM worked with Epiq to send notice to individuals who potentially were impacted by the Burglary. AHOM initially provided Epiq with a list of 13,861 individuals potentially impacted by the Burglary, which was comprised of approximately 10,533 individuals in Delaware, 1,980 individuals in Maryland, and 1,348 individuals in Pennsylvania.  Later documentation from Epiq showed that 13,709 individuals were notified.  The discrepancy of 152 notifications between those submitted and those mailed is due to the fact that 148 of the individuals were duplicates in the data file, and already received notification as part of the 13,709 notifications that Epiq mailed out. The remaining 4 individual entries appeared to have been incomplete registrations.

conferences negotiating directly among counsel and preparing for mediation, including separate conversations with the mediator.

     I.    At the mediation, the Parties reached an understanding in principle concerning the general terms of a proposed settlement for the Litigation requiring submission of a final settlement agreement to the Court for preliminary approval.  Settlement discussions also continued with the assistance of the mediator after the mediation and involved the negotiation of additional settlement terms and numerous documents related to this Settlement, including this Agreement.

     J.    The Parties did not discuss attorneys' fees at the mediation, or at any time prior to agreeing to the essential terms of the Parties' Settlement (as defined in Paragraph 22).

     K.    Throughout the Litigation, and prior to and after the mediation, Class Counsel (as defined in Paragraph 4) conducted an examination and investigation of the facts and law relating to the matters set forth in the Amended Complaint and engaged in numerous discussions with Defendants regarding the claims therein.

     L.    The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims (as defined in Paragraph 56) of the Settlement Class.   The Parties intend this Agreement to bind the Settlement Class Representative, Lincare, AHOM, and all Settlement Class Members (as defined in Paragraph 24) who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Litigation be settled, compromised, and dismissed on the merits and with prejudice as to Defendants, subject to Court approval as required by Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.   <u>DEFINITIONS</u>

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

     1.    "Burglary" means the break-in and theft that occurred on or about January 6, 2017, at AHOM's Newark, Delaware facility.

     2.    "Claims Deadline" means ninety (90) days after the Notice Deadline.

     3.    "Claim Form" or "Claim" means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement.  The proposed Claim Form, which may be modified for formatting purposes, is attached hereto as Exhibit A.

     4.    "Class Counsel" refers to the following attorneys who are counsel for Plaintiff and seek to be appointed as counsel for the Settlement Class:

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Ryan J. McGee
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email:  jyanchunis@ForThePeople.com
          rmcgee@ForThePeople.com

– and –

**LEVIN SEDRAN BERMAN LLP**
Charlie Schaffer
Daniel C. Levin
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: CSchaffer@lfsblaw.com
          DLevin@lfsblaw.com

5.      "Court" refers to the Honorable Elizabeth A. Kovachevich, United States District Court Judge for the Middle District of Florida, Tampa Division, or such other judge to whom the Litigation may be assigned.

6.      "Days" means calendar days, except, when computing any period of time prescribed or allowed by this Agreement, does not include the day of the act, event, or default from which the designated period of time begins to run. Further, when computing any period of time prescribed or allowed by this Agreement, "Days" includes the last day of the period unless it is a Saturday, a Sunday, or a federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal legal holiday.

7.      "Effective Date" means the first business day after which all of the following events have occurred: (a) Class Counsel and Defendants' counsel have executed this Agreement; (b) the Court has entered a Final Judgment; and (c) the time in which to seek review, rehearing, or appeal of the Final Judgment has expired without any review, rehearing or appeal having been sought or taken, *i.e.*, thirty (30) days after entry of the Final Judgment, or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired.  The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, the payment of attorneys' fees and expenses in the amounts requested by Class Counsel.  Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue on appeal being the Fee and Expense Award awarded to Class Counsel (as defined in Paragraph 61) or the Service Award (as defined in paragraph 60).

– 4 –

8.      "Eligible Incident" means an incident of fraud perpetrated on a Settlement Class Member, which occurred between January 6, 2017, through the date of the Notice (as defined in paragraph 12), and which is fairly traceable to the Burglary.  Eligible Incidents include and are limited to the following: (i) the opening of a fraudulent/false loan (including, but not limited to, for example, a mortgage, student loan, health services loan, and automotive loan) using a Settlement Class Member's name or PII (as defined in Paragraph 18); (ii) the opening of a fraudulent or false credit or debit card using a Settlement Class Member's name or PII; (iii) any fraud related to attempted extensions of credit or purchases using a fraudulent credit or debit card; (iv) the filing of a fraudulent/false unemployment claim using a Settlement Class Member's name or PII; (v) fraudulent changes of a Settlement Class Member's mail address using a Settlement Class Member's name or PII; (vi) the fraudulent issuance of a passport using a Settlement Class Member's name or PII; and (vii) the fraudulent issuance of a driver's license using a Settlement Class Member's name or PII.  Eligible Incidents do *not* include (i) incidents of fraudulent charges on credit cards in existence *before* the Burglary, (ii) incidents of identity theft relating to the filing of a false or fraudulent tax return or unauthorized request for an Internal Revenue Service ("IRS") tax transcript, or (iii) any Out-of-Pocket Loss (as defined in Paragraph 17) fairly traceable to the Burglary.

9.      "Final Approval" means the date that the Court grants final approval of the Settlement and determines the amount of fees and expenses to be awarded to Class Counsel and the amount of the Service Award to the Settlement Class Representative (as defined in Paragraph 60).  In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

10.     "Final Judgment" means the final judgment and order of dismissal to be entered by the Court upon Final Approval that is the same in all material respects as set forth in Section X.

11.     "Lost Time" means time reasonably spent dealing with the effects of the Burglary.

12.     "Notice" means the forms of notice to be disseminated to Settlement Class Members informing them, *inter alia*, about this Agreement; their rights to participate in the Settlement; to opt-out, or to object to same; and to appear at the Final Approval Hearing (as defined in paragraph 40), and instructing them on how to submit a Claim.  Notice shall be substantially in the Postcard Notice and Long Form Notice forms attached as Exhibits B and C, respectively, to this Agreement and approved by the Court.

13.     "Notice Deadline" means thirty (30) days after entry of the Preliminary Approval Order (as defined in Paragraph 40).

14.     "Notice Program" means the plan for disseminating Notice, as set forth in this Agreement, which consists of: (i) a direct-mail postcard notice to those Settlement Class Members for whom Defendants can ascertain a mailing address from its records with reasonable effort, as updated using a National Change of Address database ("Mail Notice"); (ii) creation of a Telephone Hotline (as defined in paragraph 26) and corresponding call center for Settlement Class Members; and (iii) notice posted on the Settlement Website (as defined in Paragraph 25).

The forms of notice shall be substantially in the Postcard Notice and Long Form Notice forms attached as Exhibits B and C, respectively, to this Agreement and approved by the Court. The Notice Program shall be effected in substantially the manner provided in Section IX.

15. "Objection Deadline" means sixty (60) days after the Notice Deadline.

16. "Opt-Out Deadline" means sixty (60) days after the Notice Deadline.

17. "Out-of-Pocket Loss" means any out-of-pocket loss or unreimbursed charge or expense that is fairly traceable to the Burglary, which was incurred between January 6, 2017, and the date of the Notice, and which has not already been fully reimbursed by Defendants or Equifax Credit Watch Silver. Settlement Class Members must submit Reasonable Documentation (as defined in Paragraph 20) for all Out-of-Pocket Losses. Non-exhaustive examples of Out-of-Pocket Loss include unreimbursed expenses related to fraud and identity theft resulting from, or related to, the Burglary, as well as any consequential expenses related to the Burglary, including late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, card cancellation or replacement fees, costs to place a freeze or alert on credit reports, professional fees incurred in connection with identity theft, and costs to replace driver's licenses, state identification cards, or social security cards. Out-of-Pocket Losses do not include any losses relating to a Settlement Class Member's purchase of identity theft service, having had a false or fraudulent tax return filed in their name, having had an IRS tax transcript request in their name without their authorization, or having experienced an Eligible Incident, as addressed in Paragraphs 34(b), (c), (d), and (e), below. To recover Out-of-Pocket Losses, Settlement Class Members also must attest that they have no knowledge of incidents of identity theft (other than fraudulent credit card activity) during the three years prior to 2017.

18. "Personally Identifiable Information" or "PII" means identifiable information including, without limitation, name, address, telephone number, birthday, social security number, financial information, payment card account numbers, expiration dates, card verification values, health information, diagnosis codes, and insurance information potentially compromised as a result of the Burglary.

19. "Plaintiff's Counsel" refers to the attorneys of record who have appeared on behalf of and as counsel for the Plaintiff in this Litigation:

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis
Florida Bar No. 324681
Ryan J. McGee
Florida Bar No. 064957
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email:   jyanchunis@ForThePeople.com
             rmcgee@ForThePeople.com

– and –

**LEVIN SEDRAN BERMAN LLP**
Charlie Schaffer
Daniel C. Levin
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
Email: CSchaffer@lfsblaw.com
        DLevin@lfsblaw.com

20.    "Reasonable Documentation" means documentation submitted by a Settlement Class Member in support of either an Out-of-Pocket Loss Claim or Eligible Incident Claim, which tends to show that the Out-of-Pocket Loss or Eligible Incident in question is fairly traceable to the Burglary.  Non-exhaustive examples of Reasonable Documentation include credit card statements, bank statements, invoices, official governmental correspondence, and receipts.  A valid Claim, other than a request for Lost Time, cannot be supported solely by a personal certification, declaration, or affidavit from the claimant or the claimant's representative(s), but such information may be considered with other Reasonable Documentation.

21.    "Releasing Parties" means the Settlement Class Representative, all Settlement Class Members who do not timely and properly exclude themselves by "opting out" from the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

22.    "Settlement" means the settlement into which the Parties have entered to resolve the Litigation.  The terms of the Settlement are as set forth in this Agreement, including the exhibits hereto.

23.    "Settlement Administrator" means Epiq Systems, Inc.

24.    "Settlement Class Members" or "Settlement Class" means all persons who fall within the settlement class definition set forth in Paragraph 27.

25.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order (as defined in Paragraph 40), but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, the Preliminarily Approval Order, the Claim Form, the Amended Complaint, and such other documents as Class Counsel and Defendants agree to post, or that the Court orders posted, on the website.  These documents shall remain on the Settlement Website at least until Final Approval.  The Settlement Website shall include an "Important Dates" section that prominently lists the notable dates and deadlines concerning the Settlement, as set forth herein.  The URL of the Settlement Website, if available, shall be www.AHOMSettlement.com.  If this URL is unavailable, the Settlement Website URL will be agreed upon by Class Counsel and Defendants.  Settlement Class Members shall be able

– 7 –

to submit Claim Forms electronically via the Settlement Website.  The Settlement Website shall not include any advertising and shall remain operational until at least thirty (30) days after the Claims Deadline.

26.     "Telephone Hotline" means the toll-free telephone number that the Settlement Administrator will establish as soon as practicable following issuance of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement. Settlement Class Members shall be able to request a mailed copy of Claim Forms telephonically via the Telephone Hotline.  The Telephone Hotline shall not include any advertising and shall remain operational until at least thirty (30) days after the Claims Deadline.

## III.    SETTLEMENT CLASS

27.     For settlement purposes only, the Parties agree that the Court should certify the following Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All individuals in the United States who are current or former patients or customers of Defendants, whose PII was stored on the unencrypted hard drives stolen from Defendants' Newark, Delaware location on or about January 6, 2017, and who suffered injury or harm resulting from the dissemination of their PII.

If for any reason whatsoever this Settlement is not finalized or the Settlement as detailed in this Agreement is not finally approved by the Court, the certification of the Settlement Class shall be void, and the Parties and the Litigation will return to the status as it existed on November 6, 2019, and no doctrine of waiver, estoppel, or preclusion will be asserted based on this Agreement or the Settlement terms contained herein, in any proceedings, in support of or in response to any motion seeking class certification, or otherwise asserted at any other stage of the Litigation or in any other proceeding.

28.     Excluded from the Settlement Class is the Judge presiding over this Litigation, the Judge's immediate family members, and any members of the Judge's judicial staff, the officers and directors of Defendants and their immediate family members, Class Counsel and their immediate family members, and persons who timely and validly request exclusion from the Settlement Class, and the legal representatives of each of these excluded categories of persons.

29.     For settlement purposes only, Class Counsel shall seek, and Defendants shall not oppose, the appointment of MORGAN & MORGAN COMPLEX LITIGATION GROUP and LEVIN SEDRAN BERMAN LLP as Class Counsel and appointment of Plaintiff Joseph Kuss as settlement class representative ("Settlement Class Representative"). The Settlement Class Representative will move for certification of the Settlement Class contemporaneously with his motion for preliminary approval of the Settlement.  Subject to the provisions set forth in Paragraphs 27, above, and 32, 33, and 67, below, Defendants agree not to contest certification of the Settlement Class.

## IV.    NO ADMISSION OF LIABILITY

30.    Defendants vigorously dispute the claims alleged in the Litigation and do not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  Defendants have agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Litigation.

31.    Class Counsel and Settlement Class Representative believe that the claims asserted in the Litigation have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement and the risks associated with the continued prosecution of the Litigation.   Class Counsel and the Settlement Class Representative have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

32.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

33.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiff or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## V.    SETTLEMENT CONSIDERATION

34.    In exchange for Plaintiff's and Settlement Class Members' release of claims as set forth in Section XI, Defendants will provide the following relief as part of the Settlement, as described in further detail below: (i) Extended Identity Theft Protection, (ii) Reimbursement for Self-Paid Identity Theft Protection, (iii) Payment for False or Fraudulent Tax Returns, (iv) Payment for IRS Tax Transcript Requests, (v) Payment for Eligible Incident Claims, (vi) Payment for Out of-Pocket Losses, (vii) Non-Monetary Relief, which includes AHOM's adoption and maintenance of certain Enhanced Data Security Measures (as defined in Paragraph 36); and (viii) Additional Class Benefits, which include Defendants' agreement to pay, separately from and in addition to all other consideration and relief provided or offered by Defendants as part of the Settlement, the costs of administration of the Settlement and Class Notice, any Service Award approved for or awarded to the Settlement Class Representative (as defined in Paragraph 60), and any Fee and Expense Award approved for or awarded to Class Counsel (as defined in Paragraph 61).

Defendants shall make available the following compensation to Settlement Class Members who submit valid and timely proofs of claim:

a.    <u>Extended Identity Theft Protection</u>. Defendants previously offered all Settlement Class Members 12 months of identity theft protection services through Equifax Credit Watch Silver.    Defendants will extend the coverage of Equifax Credit Watch Silver (or its equivalent if this service is no longer being supported by Equifax) for an additional 24 months, commencing within thirty (30) days of the Effective Date of the Settlement.  The Equifax Credit Watch Silver coverage (or its equivalent) will include, among other things, (i) comprehensive credit file monitoring of Settlement Class Members' Equifax credit report with daily notification of key changes; (ii) wireless and customizable alerts; (iii) monthly credit monitoring reporting options; (iv) one initial online credit report; (iv) automatic fraud alerts; (v) ID Theft reimbursement insurance up to $25,000 (policy limitations and exclusions may apply); and (vi) unlimited access to a toll-free customer care hotline. All eligible Settlement Class Members who submit a valid Claim Form requesting the Equifax Credit Watch Silver package shall receive enrollment instructions from the Settlement Administrator and be eligible to receive two years of the foregoing complimentary services commencing within thirty (30) days of the Effective Date.  All costs associated with the Equifax Credit Watch Silver services provided in this Agreement shall be borne and separately paid by Defendants.

b.    <u>Reimbursement of Self-Paid Identity Theft Protection</u>.  Any Settlement Class Member who purchased identity theft protection on his or her own initiative after January 6, 2017, through date of the Notice, may seek reimbursement for the actual cost incurred for any identity theft protection services, for up to twelve (12) months of his or her chosen service, not to exceed One Hundred Fifty Dollars and No Cents ($150.00) per Settlement Class Member ("Self-Paid Identity Theft Protection Claimant"), provided however that the time period of coverage does not coincide with the coverage provided in Subparagraph (a), above.  To obtain reimbursement, the Settlement Class Member must submit documentation to prove the monthly cost incurred by him or her.  Any Settlement Class Member who seeks reimbursement for self-paid identity theft protection remains eligible to register for the Extended Identity Theft Protection service provided for in Subparagraph (a), above.

There will be a cap of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) for Reimbursement of Self-Paid Identity Theft Protection pursuant to this subparagraph, such that the maximum payable by Defendants for Reimbursement of Self-Paid Identity Theft Protection for all Self-Paid Identity Theft Protection Claimants in the aggregate shall be Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00). Defendants shall be obligated to reimburse only those claims for Self-Paid

Identity Theft Protection that are actually made by Settlement Class Members and approved pursuant to this subparagraph. Defendants thus shall be obligated to expend only that portion of the Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) cap referenced herein that corresponds to the aggregate dollar amount of asserted and approved claims for Self-Paid Identity Theft Protection.

In the event that the total combined dollar amount of all valid and timely submitted Claims for Reimbursement of Self-Paid Identity Theft Protection exceeds Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) in the aggregate, the $150.00 cash reimbursement to be provided to each Self-Paid Identity Theft Protection Claimant for such protection shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Self-Paid Identity Theft Protection Claimants equals Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00). The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Self-Paid Identity Theft Protection Claimants.

c.    Payment for False or Fraudulent Tax Returns.   Any Settlement Class Member who experienced a false or fraudulent tax return filed after January 6, 2017, through the date of the Notice, will be eligible for a single payment of Three Hundred Fifty Dollars and No Cents ($350.00) ("Tax Fraud Claimant").  To qualify for this benefit, the Settlement Class Member must provide Reasonable Documentation, issued by the Internal Revenue Service or similar governmental agency, proving that a false tax return was filed on behalf of that Settlement Class Member and further attest that he or she has no knowledge of a false or fraudulent return having been filed in his or her name during the three-year period prior to 2017.

There will be a cap of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) for payments relating to False or Fraudulent Tax Returns pursuant to this subparagraph, such that the maximum payable by Defendants for such payments on behalf of all Tax Fraud Claimants in the aggregate shall be Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00).  Defendants shall be obligated to reimburse only those claims for False or Fraudulent Tax Returns that are actually made by Settlement Class Members and approved pursuant to this subparagraph. Defendants thus shall be obligated to expend only that portion of the Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) cap referenced herein that corresponds to the aggregate dollar amount of asserted and approved claims for False or Fraudulent Tax Returns.

In the event that the total combined dollar amount of all valid and timely submitted Claims for payments relating to False or Fraudulent Tax Returns exceeds Two Hundred Fifty Thousand Dollars and No Cents

PD.27209333.1

($250,000.00) in the aggregate, the $350.00 cash reimbursement to be provided to each Tax Fraud Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Tax Fraud Claimants equals Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00).  The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Tax Fraud Claimants.

d.   <u>Payment for IRS Tax Transcript Requests.</u>  Any Settlement Class Member as to whom an IRS tax transcript was requested without his or her authorization using his or her PII after January 6, 2017, through the date of the Notice, and who submitted an Identity Theft Affidavit to the IRS, shall be entitled to a single payment of up to One Hundred Fifty Dollars and No Cents ($150.00) ("Tax Transcript Claimant").  To qualify for this benefit, the Settlement Class Member must provide Reasonable Documentation proving the existence of the tax transcript request, including submission of the Identity Theft Affidavit, and further attest that the claimant has no knowledge of an IRS tax transcript having been fraudulently requested using claimant's PII during the three-year period prior to 2017.

There will be a cap of One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) for payments relating to IRS Tax Transcript Requests pursuant to this subparagraph, such that the maximum payable by Defendants for such payments on behalf of all Tax Transcript Claimants in the aggregate shall be One Hundred Fifty Thousand Dollars and No Cents ($150,000.00).  Defendants shall be obligated to reimburse only those claims for IRS Tax Transcripts that are actually made by Settlement Class Members and approved pursuant to this subparagraph. Defendants thus shall be obligated to expend only that portion of the One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) cap referenced herein that corresponds to the aggregate dollar amount of asserted and approved claims for IRS Tax Transcripts.

In the event that the total combined dollar amount of all valid and timely submitted Claims for payments relating to IRS Tax Transcript Requests exceeds One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) in the aggregate, the $150.00 cash reimbursement to be provided to each Tax Transcript Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Tax Transcript Claimants equals One Hundred Fifty Thousand Dollars and No Cents ($150,000.00).  The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Tax Transcript Claimants.

e.   <u>Eligible Incident Claims.</u>  Settlement Class Members who experienced one or more Eligible Incident(s), other than the filing of a false or fraudulent

tax return or unauthorized request for an IRS tax transcript, after January 6, 2017, through the date of the Notice, shall be entitled to receive a single payment of Two Hundred Fifty Dollars and No Cents ($250.00) ("Eligible Incident Claimant").  An amount up to, but not exceeding, One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) shall be used to compensate Settlement Class Members who experienced an Eligible Incident.

To be eligible to receive Two Hundred Fifty Dollars and No Cents ($250.00) pursuant to this subparagraph, an Eligible Incident Claimant must submit a valid and timely Claim Form and Reasonable Documentation evidencing at least one Eligible Incident on or before the Claims Deadline, must attest that he or she has no knowledge of incidents of identity theft (other than fraudulent credit card activity) during the three years prior to 2017, and otherwise comply with the terms of the Claim Form attached hereto as Exhibit A.

There will be a cap of One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) for payments relating to Eligible Incident Claimants pursuant to this subparagraph, such that the maximum payable by Defendants for such payments on behalf of all Settlement Class Members in the aggregate shall be One Hundred Fifty Thousand Dollars and No Cents ($150,000.00).  Defendants shall be obligated to reimburse only those claims for Eligible Incidents that are actually made by Settlement Class Members and approved pursuant to this subparagraph. Defendants thus shall be obligated to expend only that portion of the One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) cap referenced herein that corresponds to the aggregate dollar amount of asserted and approved claims for Eligible Incidents.

In the event that the total combined dollar amount of all valid and timely submitted Eligible Incident Claims (which individually shall not exceed Two Hundred and Fifty Dollars and No Cents ($250.00) per Eligible Incident Claimant), exceeds One Hundred Fifty Thousand Dollars and No Cents ($150,000.00) in the aggregate, the Two Hundred and Fifty Dollars and No Cents ($250.00) cash payment to be provided to each Eligible Incident Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Eligible Incident Claimants equals One Hundred Fifty Thousand Dollars and No Cents ($150,000.00).  The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Eligible Incident Claimants.

f.   Out-of-Pocket Losses.  Settlement Class members who claim they suffered reasonable Out-of-Pocket Losses or Lost Time (other than relating to the purchase of identity theft service, having had a false or fraudulent tax return filed in their name, having had an IRS tax transcript request in their

name without their authorization, or having experienced an Eligible Incident, as addressed in Subparagraphs (b), (c), (d), and (e), above) as a result of the Burglary shall be entitled to reimbursement in an amount not to exceed a single payment of Five Hundred Dollars and No Cents ($500.00), subject to the terms and conditions set forth herein and in the Claim Form attached hereto as Exhibit A ("Out-of-Pocket Loss Claimant"). Payments for Out-of-Pocket Loss claims, including Lost Time, shall be capped at Five Hundred Dollars and No Cents ($500.00) per each eligible Out-of-Pocket Loss Claimant. To be eligible to receive up to, but not exceeding, Five Hundred Dollars and No Cents ($500.00) pursuant to this subparagraph, an Out-of-Pocket Loss Claimant must submit a valid and timely Claim Form and Reasonable Documentation supporting the claim for Out-of-Pocket Losses on or before the Claims Deadline, and such Claim Form must be approved by the Settlement Administrator. As part of Out-of-Pocket Losses, and included in the foregoing Five Hundred Dollars and No Cents ($500.00) cap, Settlement Class Members can submit a self-verifying statement under penalty of perjury for Lost Time and be reimbursed for up to three (3) hours at Fifteen Dollars per hour ($15/hour) under this claim. An Out-of-Pocket Loss Claimant seeking relief who successfully qualifies for relief under Subparagraphs (b), (c), (d), or (e), above, and who also files a claim under this subparagraph, shall not be entitled to seek Lost Time associated with the incidents listed in Subparagraphs (b), (c), (d), or (e), above.

To be eligible to receive up to Five Hundred Dollars and No Cents ($500.00) pursuant to this subparagraph, a Claimant must submit a valid and timely Claim Form and Reasonable Documentation, must attest that he or she has no knowledge of incidents of identity theft (other than fraudulent credit card activity) during the three years prior to 2017, and otherwise comply with the terms of the Claim Form attached hereto as Exhibit A.

There will be a cap of Two Hundred Thousand Dollars and No Cents ($200,000.00) for payments relating to Out-of-Pocket Losses pursuant to this subparagraph, such that the maximum payable by Defendants for such payments on behalf of all Out-of-Pocket Loss Claimants in the aggregate shall be Two Hundred Thousand Dollars and No Cents ($200,000.00). Defendants shall be obligated to reimburse only those claims for Out-of-Pocket Losses that are actually made by Settlement Class Members and approved pursuant to this subparagraph. Defendants thus shall be obligated to expend only that portion of the Two Hundred Thousand Dollars and No Cents ($200,000.00) cap referenced herein that corresponds to the aggregate dollar amount of asserted and approved claims for Out-of-Pocket Losses.

In the event that the total combined dollar amount of all valid and timely submitted Out-of-Pocket Loss Claims (which individually shall not exceed

Five Hundred Dollars and No Cents ($500.00) per Out-of-Pocket Loss claim, including Lost Time), exceeds Two Hundred Thousand Dollars and No Cents ($200,000.00) in the aggregate, the cash payment to be provided to each Out-of-Pocket Loss Claimant shall be reduced on a pro rata basis, such that the aggregate dollar amount of the cash payments to all Out-of-Pocket Loss Claimants equals Two Hundred Thousand Dollars and No Cents ($200,000.00).  The Settlement Administrator shall calculate any such pro rata reduction and distribute the monetary amount on such pro rata basis to the Out-of-Pocket Loss Claimants.

35.  <u>Qualified Settlement Fund Status</u>.  The monies used to pay the claims authorized in the immediately preceding paragraph, consistent with the separate monetary caps for each category of claims shall constitute a Court-approved Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1, as necessary.  The Settlement Administrator shall be responsible for all administrative, accounting, and tax compliance activities in connection with the monies used to pay the claims and the monies deposited with the Settlement Administrator, including any filing necessary to obtain Qualified Settlement Fund status pursuant to Treas. Reg. § l.468B-l.  Defendants shall provide to the Settlement Administrator any documentation necessary to facilitate obtaining Qualified Settlement Fund status pursuant to Treas. Reg. § 1.468B-l.  All taxes on income or interest generated by the monies used to pay the claims, if any, shall be paid out before the payment of any claims provided in Paragraph 34, above.

36.  <u>Non-Monetary Relief (Enhanced Data Security Measures)</u>. In exchange for Plaintiff's and Settlement Class Members' release of claims as set forth in Section XI, Defendants further have implemented, and/or have agreed to implement, and agree to maintain, security measures to protect the PII of their patients for a period of no less than two (2) years after the Effective Date ("Enhanced Data Security Measures").  The Enhanced Data Security Measures include the following:

   a.  <u>Data Risk Assessment</u>.  Defendants perform, and will continue to perform, an external HIPAA Risk Assessment at least every two (2) years, as well as an Annual Risk Analysis, that identifies material internal and external risks to the security of patients' PII stored on Defendants' systems.

   b.  <u>Head of Information Technology ("IT")</u>.  Defendants will continue to maintain a Head of IT to coordinate and be responsible for the company's program(s) to protect the security of patients' PII.  The Head of IT shall also be responsible for implementing and monitoring the company's data security incident response program(s).  The Head of IT shall have training on pertinent cybersecurity, risk management, and data breach and security incident response issues.

   c.  <u>Employee Education and Training</u>.  Defendants have provided and will continue to provide training and/or guidance to educate its workforce on an annual basis concerning the following: (i) information security issues; (ii) privacy awareness and the importance of protecting PII; and (iii) the

– 15 –

importance of encrypting PII.

## VI.    DISTRIBUTION PLAN AND CLAIMS PROCESS

37.    Settlement Class Members are eligible to receive monetary relief as provided in Paragraph 34 by submitting a valid and timely Claim Form supported by Reasonable Documentation and/or proper attestation.  In order to be deemed timely, Claim Forms must be submitted or postmarked by the Claims Deadline.  There will be no obligation to honor or make any payment in connection with any Claim Forms submitted or postmarked after the Claims Deadline, even if such Claim Form otherwise would be valid.  The Settlement Administrator will issue all monetary payments to claimants, as provided in Paragraph 34, no later than One Hundred and Eighty (180) days after the Effective Date, in the form of a mailed check.

38.    To the extent any claims checks issued to Settlement Class Members for Claims authorized under Paragraph 34 above have not been redeemed or cashed by the One Hundred and Eighty-Fifth (185th) day following the mailing of the last Settlement Class Member Claims check, those additional monies corresponding to the unredeemed and uncashed claims checks shall be awarded to The American Lung Association or any other recipient the selected by the Court should it request another recipient, in which case the parties will provide the Court with several qualified candidates.

39.    For each Claim Form submitted, the Settlement Administrator shall verify that each claimant who submits a Claim Form is in fact a Settlement Class Member, and shall have the discretion and authority to determine whether and to what extent the claimant is entitled to a cash payment for his or her Claim, based on the submission of a valid and timely Claim Form, any Reasonable Documentation, and the other criteria set forth herein.  To the extent the Settlement Administrator determines a Claim Form is deficient in whole or part (including any deficiency relating to the submission of supporting documentation), within ten (10) days of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty (20) days to cure the deficiencies.  Such notice shall inform the Settlement Class Member that he or she can attempt to cure the deficiencies outlined in the notice.  The determination of the Settlement Administrator as to the validity or permissibility of a claim shall be final.

## VII.    PRELIMINARY APPROVAL

40.    Upon execution of this Agreement by the Parties, Class Counsel shall promptly file a motion with the Court seeking an order granting preliminary approval of this Settlement ("Preliminary Approval Order"), substantially in the form attached hereto as Exhibit E.  The motion for preliminary approval shall request that the Court: (i) preliminarily approve the terms of the Settlement as within the range of fair, adequate, and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iii) approve the Notice Program set forth herein and approve the form and content of the Notice; (iv) approve the procedures set forth in Section IX for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay all proceedings in the Litigation unrelated to the Settlement, pending Final Approval of

the Settlement; (vi) stay and/or enjoin, pending Final Approval of the Settlement, any actions brought by Settlement Class Members concerning a Released Claim (as defined in Paragraph 56); (vii) appoint settlement class representatives and settlement class counsel; and (viii) schedule a Final Approval hearing for a time and date convenient for the Court, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith and should be finally approved, and determine whether to approve Class Counsel's application for attorneys' fees and expenses and Service Award ("Final Approval Hearing").

41.     Defendants shall provide notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").

## VIII.   SETTLEMENT ADMINISTRATOR

42.     The Settlement Administrator shall administer various aspects of the Settlement as provided in Section VI, and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to: (i) overseeing administration of the funds paid by Defendants to Settlement Class Members; (ii) providing Mail Notice to Settlement Class Members as described in Section IX; (iii) establishing and operating the Settlement Website and the Telephone Hotline; (iv) administering the Claims processes; (v) approving and disapproving Claims submitted pursuant to the Claim Forms, and (vi) distributing cash payments according to the processes and criteria set forth herein and in the exhibits hereto.

43.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, include:

a.     Obtaining from Defendants the name and mailing address of Settlement Class Members for the purpose of sending Mail Notice to Settlement Class Members to the extent that such information is reasonably available from Defendants' records and updating the addresses using a National Change of Address database;

b.     Obtaining from Defendants information necessary to establish a reasonably practical procedure to verify Settlement Class Members who, during the period beginning on or about January 6, 2017, and continuing through the present, might have had their PII, including names, addresses, social security numbers, and/or W-2 information, compromised and/or disseminated to a third-party or parties, without authorization or consent;

c.     Establishing and maintaining a post office box for mailed written notifications of exclusion from the Settlement Class;

d.     Establishing and maintaining a secure Settlement Website allowing access only to the Settlement Class Members, Class Counsel, Defendants' counsel, and the Settlement Administrator;

e.     Establishing and maintaining the Telephone Hotline for Settlement Class Members to call with Settlement-related inquiries or request mailed copies

of the electronic Claim Form;

f.    Responding to any mailed Settlement Class Member inquiries;

g.    Processing all written notifications of exclusion from the Settlement Class;

h.    Providing weekly reports and, no later than ten (10) days after the Opt-Out Deadline, a final report to Class Counsel and Defendants' counsel, that summarizes the number of written notifications of exclusions received that week, the total number of written notifications of exclusions received to date, and other pertinent information as requested by Class Counsel or Defendants' counsel;

i.    In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of the Notice Program in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly provided written notification of exclusion from the Settlement Class;

j.    Reviewing, determining the validity of, approving or disapproving, and responding to all Claims submitted by Settlement Class Members, pursuant to criteria set forth in Section VI and the Distribution and Allocation Plan attached hereto as Exhibit D;

k.    After the Effective Date, processing and transmitting distributions to Settlement Class Members in accordance with Section VI and the exhibits attached hereto;

l.    Providing weekly reports and a final report to Class Counsel and Defendants' counsel that summarize the number of Claims since the prior reporting period, the total number of Claims received to date, the number of any Claims approved and denied since the prior reporting period, the total number of Claims approved and denied to date, and other pertinent information as requested by Class Counsel or Defendants' counsel; and

m.    Performing any function related to settlement administration at the agreed-upon instruction of Class Counsel and Defendants' counsel, including, but not limited to, verifying that cash payments have been distributed in accordance with Section VI and the exhibits attached hereto.

44.    All costs associated with the Settlement Administrator's provision of the services provided for in this Agreement shall be borne by and separately paid by Defendants. Such payment by Defendants shall be made separate from and in addition to funds paid by Defendants to Settlement Class Members to provide monetary relief and Credit and Identity Monitoring and Protection services, as provided for in Paragraph 34, above

## IX.     NOTICE, OPT-OUTS, AND OBJECTIONS

45.     Upon issuance of the Preliminary Approval Order regarding the Settlement, at the direction of Defendants, the Settlement Administrator will implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order, but, in any event, the Settlement Administrator will place the Mail Notices for delivery by the Notice Deadline.  The Notice will include, among other information: (i) a short and plain statement of the background of the Litigation and description of the nature and scope of Plaintiff's claims; (ii) a description of the Settlement and the relief provided thereunder; (iii) an explanation of the scope and impact of the release provided under the Settlement; (iii) a statement that any relief to Settlement Class Members is contingent on the Court's approval of the Settlement; (iv) the manner and dates by which Settlement Class Members may object to or opt-out of the Settlement; (v) the date upon which the Final Approval Hearing will occur; and (vi) the web address of the Settlement Website at which Settlement Class Members may access this Agreement, the Claim Form, and other related documents and information concerning the Settlement.

46.     The Notice Program has three components: (1) Mail Notice; (2) Notice on the Settlement Website; and (3) the Telephone Hotline.  The Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom Defendants can ascertain a mailing address from its records with reasonable effort, as updated through the use of a National Change of Address database.  For any Mail Notices that are returned undeliverable with forwarding address information, the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated.  For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses and shall re-mail the Mail Notice to the extent updated addresses are identified.  The Settlement Administrator need make only one attempt to re-mail any Mail Notice that is returned as undeliverable.

47.     The Notice shall include a procedure for a Settlement Class Member to exclude himself or herself from the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class.  Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include: (i) the name of this Litigation; (ii) the individual's name and address; (iii) a statement that he or she wants to be excluded from the Litigation; and (iv) the individual's signature.  The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing.  Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement.

48.     The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for the Fee and Expense Award and Service Award (as defined in Paragraphs 60 and 61).  Objections to the Settlement or to the application for the Fee and Expense Award and Service Award must be filed electronically with the Court, or mailed to the Clerk of the Court, Class Counsel, and Defendants' counsel.  For an

– 19 –

objection to be considered by the Court, the objection must be: (i) electronically filed by the Objection Deadline; or (ii) mailed first-class postage prepaid to the Clerk of Court, Class Counsel, and Defendants' counsel, at the addresses provided at the Settlement Website, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth the following:

a.    the name of the Litigation;

b.    the objector's full name, address, email address, and telephone number;

c.    an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.    all grounds for the objection, accompanied by any legal support for the objection;

e.    the identity of all counsel who represent the objector, including any former or current counsel who previously represented the objector and may be entitled to compensation for any reason related to the objection to the Settlement, the fee application, or the application for Service Award;

f.    the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

g.    the number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date on which the objector files the objection, the caption of each case in which the objector has made such objections, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

h.    the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five (5) years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objections, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

i.    any and all agreements that relate to the objection or the process of objecting, whether written or verbal, between the objector or objector's counsel and any other person or entity;

j.    a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.    a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

– 20 –

l. the objector's signature on the written objection (an attorney's signature is not sufficient).

49. The Mail Notice portion of the Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable.

50. The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court.  The Notice shall be posted on the Settlement Website by the Notice Deadline.

51. Within seven (7) days after the Notice Deadline, the Settlement Administrator shall provide Class Counsel and Defendants' counsel with one or more affidavits confirming that the Mail Notice, posting of Notice on the Settlement Website, and creation of the Telephone Hotline were completed in accordance with the Parties' instructions and the Court's approval.  Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representative's motion for final approval of the Settlement.

52. Defendants shall pay all costs and expenses associated with providing Notice to Settlement Class Members and the implementation of the Notice Program including, but not limited to, the Settlement Administrator's fees.  Such payment by Defendants shall be made separate from and in addition to funds paid by Defendants to Settlement Class Members to provide monetary relief and Credit and Identity Monitoring and Protection services, as provided for in Paragraph 34, above.

## X. <u>FINAL JUDGMENT</u>

53. Settlement Class Representative's motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur.  By no later than thirty (30) days after the Notice Deadline, Plaintiff shall file a motion for final approval of the Settlement and a motion for the Fee and Expense Award and for Service Award.  By no later than seven (7) days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any Settlement Class Member objections, including any objections to the requested attorneys' fees and expense reimbursement, and to file additional papers in support of the Settlement or Service Award request.

54. At the Final Approval Hearing, the Court will consider Settlement Class Representative's motion for final approval of the Settlement, and Class Counsel's application for the Fee and Expense Award and for Service Award.  In the Court's discretion, the Court also may hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the application for the Fee and Expense Award and the Service Award, provided the objectors filed timely objections that meet all of the requirements listed in Paragraph 48, above.

55. At or following the Final Approval Hearing, the Court will determine whether to enter the Final Judgment granting final approval of the Settlement, and whether to approve Class Counsel's request for the Fee and Expense Award and the Service Award.  The proposed Final Judgment that will be filed with the motion for final approval shall be in a form agreed upon by Class Counsel and Defendants' counsel.  Such proposed Final Judgment shall,

among other things:

a.    Determine that the Settlement is entered into in good faith, is fair, adequate, and reasonable, and is in the best interests of the Settlement Class;

b.    Determine that the Settlement includes no admission of liability by Defendants;

c.    Finally certify the Settlement Class for settlement purposes only;

d.    Determine that the Notice provided under the Notice Program satisfied Due Process requirements and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

e.    Dismiss the Litigation with prejudice;

f.    Bar and enjoin the Releasing Parties from asserting any of the Released Claims, as set forth in Section XI, including during the pendency of any appeal from the Final Judgment;

g.    Release Defendants from the Released Claims, as set forth in Section XI;

h.    Reserve the Court's continuing and exclusive jurisdiction over Defendants, and all Settlement Class Members (including all objectors), to administer, supervise, construe, and enforce this Agreement in accordance with its terms; and

i.    Contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, and/or settlement of this Litigation.

## XI.    <u>RELEASES</u>

56.    As of the Effective Date, the Releasing Parties, each on behalf of himself or herself and on behalf of his or her respective spouses, children, heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Defendants, which includes Lincare Holdings Inc. and American HomePatient, Inc, and each of their present and former direct and indirect, domestic and foreign parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and the present and former directors, officers, employees, agents, insurers or reinsurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them (collectively the "Released Parties"), jointly and severally, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or

– 22 –

unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Burglary that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure, or disclosure of Settlement Class Members' PII; (2) Defendants' maintenance, retention, storage, and destruction of Settlement Class Members' PII; (3) Defendants' information security policies, procedures, and practices or training; and (4) Defendants' notice of the Burglary to Settlement Class Members (the "Released Claims").

57.     For the avoidance of doubt, the Released Claims include any claims that a Releasing Party may have under the law of any jurisdiction, including, without limitation, those arising under state or federal law of the United States (including, without limitation, any causes of action under the California Business & Professions Code § 17200 et seq., California Civil Code § 1750 et seq., California Civil Code § 1798.80 et seq., California Civil Code § 56.10 et seq., and any similar statutes or data breach notification statutes in effect in the United States or in any state in the United States); causes of action under the common or civil laws of any state in the United States, including but not limited to: unjust enrichment, negligence, bailment, conversion, negligence per se, breach of contract, breach of implied contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, misrepresentation (whether fraudulent, negligent, or innocent), fraudulent concealment or nondisclosure, invasion of privacy, public disclosure of private facts, and misappropriation of likeness and identity; any causes of action based on trade practices provided for under any state statutes or laws; any causes of action based on privacy rights provided for under the constitutions of the United States or of any state in the United States; and also including, but not limited to, any and all claims in any state or federal court of the United States, for damages, injunctive relief, restitution, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit or financial account monitoring services, identity theft insurance, the creation of a fund for future damages, statutory penalties, restitution, the appointment of a receiver, and any other form of relief. The Released Claims do not include any claims arising from or relating to any conduct by Defendants after the Effective Date.

The Releasing Parties understand that the Releasing Parties are releasing Released Claims that the Releasing Parties may not know about. Such a release is the Releasing Parties' knowing and voluntary intent, even though the Releasing Parties recognize that someday the Releasing Parties might learn that some or all of the facts the Releasing Parties currently believe to be true are not true. Nevertheless, the Releasing Parties are assuming that risk and the Releasing Parties agree that this Agreement shall remain effective in all respects in any such case. The Releasing Parties expressly waive all rights the Releasing Parties might have under any law that is intended to protect the Releasing Parties from waiving unknown Released Claims and the Releasing Parties understand the significance of doing so. California Civil Code Section 1542 provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY**

**AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties have read and understand California Civil Code Section 1542, and expressly acknowledge and agree that any and all rights under Section 1542 of the California Civil Code, other than any rights specifically reserved by law or regulation, are waived.

58.     The Final Judgment shall contain a finding that, during the course of the Litigation, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure and all other similar laws relating to the institution, prosecution, defense, or settlement of this Litigation.  No Party or related person of a Party shall assert any claims for violation of Rule 11 of the Federal Rules of Civil Procedure, or any other similar laws relating to the institution, prosecution, defense, and/or settlement of the Litigation.   The Parties agree that the Released Claims are being settled voluntarily after consultation with an experienced mediator and legal counsel who could assess the strengths and weaknesses of their respective clients' claims or defenses.

59.     Upon entry of the Final Judgment, the Releasing Parties and Defendants shall be enjoined from prosecuting any claim they have released in the preceding paragraphs in any proceeding against any of the Released Parties, Plaintiffs, and their counsel, or based on any actions taken by any of the Released Parties, Plaintiffs, or their counsel that are authorized or required by this Agreement or by the Final Judgment.  It is further agreed that the Settlement may be used as a complete defense to any proceeding subject to this section.

## XII.   ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARD

60.     Plaintiff's Counsel will ask the Court to approve, and Defendants will not oppose, a service award not to exceed Five Thousand  Dollars and No Cents ($5,000.00) for the Settlement Class Representative, Joseph Kuss, which is intended to compensate him for his efforts in the Litigation and commitment on behalf of the Settlement Class ("Service Award"). Any Service Award approved shall be paid by Defendants separate from and in addition to Defendants' provision of funds to Settlement Class Members for monetary relief and Credit and Identity Monitoring and Protection services, as provided for in Paragraph 34, above.   Any Service Award approved shall be payable consistent with the timing for paying the Fee and Expense Award, as described in Paragraph 62.

61.     Defendants agree that Class Counsel may seek an award of attorneys' fees, costs, and expenses in this action, subject to Court approval  ("Fee and Expense Award"). Class Counsel asserts that a Fee and Expense Award of Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00) represents fair compensation to Class Counsel for the risks they undertook in commencing and prosecuting the Litigation on a contingency basis, and for the benefits obtained for and conferred upon Plaintiff and the Settlement Class through prosecution of the Litigation and negotiation of the Settlement.  Class Counsel agrees not to seek a Fee and Expense Award that exceeds Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00).  Defendants waive their right to object to or oppose Class Counsel's request for a Fee and Expense Award so long as such request does not exceed Three Hundred Twenty-Five

– 24 –

Thousand Dollars and No Cents ($325,000.00); provided, however, that Defendants reserve the right to object to Class Counsel's request for the Fee and Expense Award to the extent such request exceeds the agreed-upon Fee and Expense Award of Three Hundred Twenty-Five Thousand Dollars and No Cents ($325,000.00).  The Fee and Expense Award paid to Class Counsel will be paid by Defendants separate from and in addition to all other consideration and relief offered or provided by Defendants as part of the Settlement, including without limitation, Defendants' provisions of funds to Settlement Class Members to provide monetary relief and Credit and Identity Monitoring and Protection services, as provided for in Paragraph 34, above.

62.    Within ten (10) business days of the later of (i) the Effective Date, (ii) a final order approving Class Counsel's Fee and Expense Award, or (iii) after the time for seeking rehearing, appellate or other review of the Fee and Expense Award, the Settlement Administrator shall pay to the Morgan & Morgan Complex Litigation Group all Court-approved attorneys' fees, costs, and expenses.  In the event that the amount of the Fee and Expense Award awarded by the Court is reduced on appeal, the Settlement Administrator shall pay only the reduced amount of the Fee and Expense Award awarded by the Court.  The payment of the Fee and Expense Award awarded by the Court shall be made through a wired deposit by the Settlement Administrator into the attorney client trust account for the Morgan & Morgan Complex Litigation Group.  After the Settlement Administrator has distributed the Fee and Expense Award to the Morgan & Morgan Complex Litigation Group, Class Counsel shall solely be responsible for allocating the Fee and Expense Award to any counsel that contributed to the prosecution and settlement of the Litigation.

63.    The finality or effectiveness of the Settlement and this Agreement will not be dependent on the allocation and distribution of the Fee and Expense Award.  Any disputes regarding the allocation and distribution of the Fee and Expense Award will be handled by and between Class Counsel and any counsel that contributed to the prosecution and settlement of the Litigation.

64.    In the event the Court declines to approve, in whole or in part, the payment of the Fee and Expense Award that Class Counsel requests, the remaining provisions of this Agreement shall remain in full force and effect.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the Fee and Expense Award shall constitute grounds for cancellation or termination of this Agreement.

## XIII.  **TERMINATION**

65.    Defendants shall have the right to, in their sole discretion, terminate the Agreement if more than 200 Settlement Class Members submit valid requests to opt out of the Settlement Class.  In no event will Class Counsel, the Settlement Class Representative, Defendants' corporate officers, or Defendants' counsel encourage Class Members to opt-out.

66.    This Settlement may be terminated by Settlement Class Representative or Defendants by serving on counsel for the opposing Parties and filing with the Court a written notice of termination within fourteen (14) days (or such longer time as may be agreed between Class Counsel and Defendants' counsel) after any of the following occurrences:

PD.27209333.1

a.    Class Counsel and Defendants' counsel all agree to termination before the Effective Date;

b.    The Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

c.    An appellate court reverses the Final Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand;

d.    The Court or any reviewing appellate court incorporates material terms or provisions into, or deletes or strikes material terms or provisions from, or materially modifies, amends, or changes, the Preliminary Approval Order, the proposed Final Judgment, or the Settlement; or

e.    The Effective Date does not occur.

67.    In the event of a termination as provided in Paragraph 65 or 66, or if the Court disapproves, rejects, or alters any of the Settlement terms contained in this Agreement for any reason, this Agreement shall be considered null and void, and the certification for settlement purposes of the Settlement Class will be vacated; all of the Parties' obligations under the Agreement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Litigation as of November 6, 2019.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XIV.  <u>MISCELLANEOUS</u>

68.    <u>Publicity</u>.  Plaintiff's Counsel and/or the Settlement Class Representative will not issue press releases, disseminate any statements or information via social media, or otherwise initiate public statements regarding the Settlement.  The Parties will not make statements of any kind to any third-party regarding the Settlement prior to the filing of a motion for preliminary approval with the Court, with the exception of the Settlement Administrator.  The Parties may make public statements to the Court as necessary to obtain preliminary or final approval of the Settlement, and Class Counsel will not be prohibited from communicating with any person in the Settlement Class regarding the Litigation or the Settlement.  In all communications, the Parties must comply with all confidentiality agreements in the Litigation and not disclose information that is not a part of the public record.

69.    <u>Destruction of Confidential Documents</u>.  Consistent with all confidentiality agreements in the Litigation, the originals and all copies of all confidential documents and/or information subject to all confidentiality agreements ("Confidential Information") shall be returned to the producing party within 30 days after the Effective Date. The parties may agree in writing that certain Confidential Information may be destroyed in lieu of being returned.  Nothing in the Agreement shall require attorney work product or pleading files to be returned or destroyed, provided that any such retained materials remain subject to the terms of the confidentiality agreement.

70.     Change of Time Periods.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court, or by written agreement of Class Counsel and Defendants' counsel and as approved by the Court, without notice to Settlement Class Members.  The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

71.     Singular and Plurals.  As used in this Agreement, all references to the plural shall also mean the singular, and to the singular shall also mean the plural, whenever the context so indicates.

72.     Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

73.     Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

74.     Obligation to Meet and Confer.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

75.     Integration.  This Agreement (along with any Exhibits attached hereto) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein (and in any Exhibits attached hereto).

76.     No Conflict Intended.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

77.     Governing Law.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

78.     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

79.     Jurisdiction.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the

Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator.  As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

80.     Notices.  All notices to Class Counsel provided for herein, shall be sent by overnight mail to:

> **MORGAN & MORGAN COMPLEX LITIGATION GROUP**
> John A. Yanchunis
> Ryan J. McGee
> 201 N. Franklin Street, 7th Floor
> Tampa, Florida 33602
> Telephone: (813) 223-5505
> Facsimile: (813) 223-5402
> Email:   jyanchunis@ForThePeople.com
>          rmcgee@ForThePeople.com

All notices to Defendants provided for herein, shall be sent by overnight mail to:

> **PHELPS DUNBAR LLP**
> Michael S. Hooker
> Jason A. Pill
> 100 South Ashley Drive, Suite 1900
> Tampa, Florida 33602
> Telephone: (813) 472-7550
> Facsimile: (813) 472-7570
> Email: Michael.Hooker@phelps.com
>        Jason.Pill@phelps.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

81.     Authority.   Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

82.     No Construction Against Drafter.  This Agreement shall be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement.

IN WITNESS WHEREOF, the Parties have caused the Agreement to be executed by their duly authorized attorneys.

Lincare Holdings Inc.

Sheila Kalteux, Senior Corporation Counsel
Lincare
19387 U.S. Highway 19 N.
Clearwater, FL 33764


American HomePatient, Inc.

Sheila Kalteux, Senior Corporation Counsel
Lincare
19387 U.S. Highway 19 N.
Clearwater, FL 33764


Settlement Class Counsel on behalf of Plaintiff
and the putative Class

MORGAN & MORGAN COMPLEX
LITIGATION GROUP
John A. Yanchunis
Ryan J. McGee
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

Counsel for Defendants.

PHELPS DUNBAR LLP
Michael S. Hooker
Jason A. Pill
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602