## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOSEPH KUSS, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.                                                CASE NO. 8:18-cv-2348-T-TGW

AMERICAN HOMEPATIENT, INC.
and LINCARE HOLDINGS, INC.,

      Defendants.

_____/

## O R D E R

THIS CAUSE came on to be heard upon the Plaintiff's Unopposed

Motion and Memorandum in Support of Preliminary Approval of Class Action

Settlement and Certification of Settlement Class (Doc. 48).  For the reasons stated

at the hearing, which are amplified below, the motion will be granted.

### I.

This is a proposed class action brought to resolve all claims against

the defendants arising from an unauthorized disclosure of private protected health

information as defined by the Health Insurance Portability and Accountability Act

("HIPAA"), and other medical and personally identifiable information (PII) (Doc.

24).  On January 6, 2017, defendant American HomePatient, Inc.'s (AHP) office

was burglarized.  The burglars stole, among other things, several computer hard

drives (and a leaf blower) (see Doc. 48-1, p. 1, ¶I.B.).  Five of the hard drives

contained unencrypted PII information of over 13,000 customers (Doc. 48, p. 1).

The plaintiff alleges that the defendants improperly failed to encrypt the PII, thereby possibly compromising the PII and placing their customers and patients at increased risk for identity theft. The amended complaint, filed in November 2018, alleges negligence, invasion of privacy, unjust enrichment, breach of implied contract, breach of fiduciary duty and the violation of the Florida Deceptive Unfair Practices and Trade Act (Doc. 24).

On May 10, 2019, the parties participated in a day-long mediation conducted by Steve R. Jaffe of Upchurch Watson White & Max Mediation Group. The parties agreed at the mediation upon the principle terms of the settlement to compensate potential class members for loss and/or harm due to the unauthorized disclosure of their PII (see Doc. 48-7, ¶¶14-17).

Under the proposed Settlement Agreement and Release (Settlement Agreement) (Doc. 48-1, p. 8), the settlement class is defined as follows:

> All individuals in the United States who are current or former patients or customers of Defendants, whose PII was stored on the unencrypted hard drives stolen from Defendants' Newark, Delaware location on or about January 6, 2017 and who suffered injury or harm resulting from the dissemination of their PII.

Specifically excluded from the Settlement Class are:

> the Judge presiding over this Litigation ... and any members of h[is] judicial staff, the officers and directors of Defendants ... class counsel ... and persons who timely and validly request exclusion from the Settlement Class ....

The plaintiff approximates there are 13,701 putative class members (Doc. 48, p. 12).

The Settlement Agreement provides monetary and non-monetary remedies to potential class members (Doc. 48-1, pp. 10-14). Specifically, the monetary benefits are (see Doc. 48-1, pp. 10-14):

1. Extended identity theft protection for an additional 24 months and insurance for ID theft reimbursement up to $25,000;

2. Reimbursement of self-paid identity theft protection, up to $150 per claimant, not to exceed $250,000 in the aggregate;

3. Payment for false or fraudulent tax returns, $350 single payment per claimant, not to exceed $250,000 in the aggregate;

4. Payment for IRS tax transcript requests, up to $150 per claimant, not to exceed $150,000 in the aggregate;

5. Eligible incident claims, $250 single payment per claimant not to exceed $150,000 in the aggregate; and

6. Out-of-Pocket losses, up to $500 per claimant, not to exceed $200,000 in the aggregate.

Thus, under the proposed Settlement Agreement, a potential class member may be eligible to receive up to $1,400. However, there is cap of one million dollars on the monetary claims reimbursement amount, which could reduce a class member's recovery in a *pro rata* amount. This monetary cap excludes the cost of the identity

theft protection and attorneys' fees. Furthermore, counsel anticipate class members will receive the full amount of monetary damages to which they are eligible because, in their experience, the percentage of claims submitted in these types of class actions are generally very low. Specifically, plaintiff's counsel stated that they anticipate, at most, six percent will submit claims, and that it is highly unlikely that each claimant would be entitled to the maximum monetary recovery.

Moreover, as indicated, the potential class members may enroll in two years of identity theft protection at no cost to them, regardless of the monetary cap. The Settlement Agreement also includes implementation of enhanced security measures to prevent a future data breach, including encryption of the PII on their computers (see Doc. 48, pp. 7-8).[1]

The Settlement Agreement further provides that class counsel may seek up to $325,000 in attorneys' fees, costs and expenses (Doc. 48-1, p. 24, ¶61). Notably, the parties did not negotiate the amount of the attorneys' fees until the parties had agreed on the potential class members' recovery (Doc. 48-7, ¶16). Furthermore, the attorneys' fee award does not reduce the amount of compensation available to settlement class members.

---

[1] Those measures include: "performance of an external HIPAA risk assessment at least every two years, maintenance of a Head of Information Technology, and/or guidance to educate Defendants' workforce on an annual basis concerning information security issues, privacy awareness, and the importance of encrypting PII." (see Doc. 48, p. 7; Doc. 48-1, p. 15). The defendants have already adopted encryption and other practices to secure the information.

4

Finally, the Settlement Agreement affords the representative plaintiff a $5,000 service award (id., ¶60). This is separate from his alleged damages of $600.

The process of notifying potential class members would be administered by Epiq Class Action & Claims Solutions, Inc., which is a company that specializes in this process (Doc. 48-9, ¶5). Two forms of notice are proposed: a post card "short-form" notice and a long-form notice (Docs. 48-3, 48-4). The notices state, among other pertinent information, the nature of the lawsuit, the details of the Settlement Agreement, how to submit a claim, contact information for class counsel, and the date and time of the final settlement approval hearing (id.). The notices also state that the potential class members may object to, or opt out of, the Settlement Agreement, and they provide instructions for doing that (see id.). The long-form notice contains more detailed information.

Significantly, the process provides putative class members three sources to obtain information about the settlement: direct mail, a settlement website devoted to this case and a telephone settlement hotline (Doc. 48-9, 51). Initially, the post card notice would be sent by mail to all potential class members for whom there are physical addresses (Docs. 48-9, ¶¶11, 16, 17). The long-form notice, which is available on the website by hyperlink, contains more detailed information about the proposed settlement and the rights affected by the proposed settlement (Doc. 48-9, ¶17; Doc. 48-4). The post card directs potential class members to the dedicated settlement website or the telephone hotline to obtain

5

further information and a claim form (Doc. 48-9, ¶¶17, 18).   Settlement class members will also have the option to submit claims electronically through the settlement website (id., ¶17). The defendants agree to pay all costs associated with providing class notice and administering the settlement benefits.   Thus, that expense will not affect the monetary fund available to the settlement class members.

On December 11, 2019, a hearing was held on the motion (see Doc. 52). After the hearing, the parties consented to my jurisdiction over this case (Doc. 56).

As discussed below, I find that the requirements to provisionally certify the proposed settlement class have been satisfied; that the settlement is provisionally adequate, fair and reasonable; and that, with the modifications discussed and agreed to at the hearing, the notice is adequate. I will therefore grant the motion.

II.

At the hearing I initially discussed with plaintiff's counsel satisfaction of the jurisdictional requirements under the Class Action Fairness Act, 28 U.S.C. 1332(d)(CAFA).   As pertinent here, that statute requires, and the plaintiff has alleged, the aggregate amount in controversy exceeds five million dollars (Doc. 24, ¶6).

"When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Basin

Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014); see Federated Mutual Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (Generally, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.") (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

Considering the proposed monetary claims settlement cap of one million dollars, the allegation that the amount in controversy exceeds five million dollars initially appeared extravagant. However, plaintiff's counsel explained at the hearing, and in a supplemental notice, how they computed the amount in controversy, and it far exceeds the jurisdictional minimum (see Doc. 58). Plaintiff's counsel stated that, based solely on the negotiated settlement remedies, the maximum monetary relief of $1,400 per class member, multiplied by the 13,701 possible class members, totals over $19 million (id., p. 4). See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010) ("[T]he pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover."). This sum, furthermore, is exclusive of the costs for identity theft protection and injunctive relief, which total millions of dollars (Doc. 58, pp. 4-5). Notably, the defendants do not dispute that the amount in controversy exceeds five million dollars (id., p. 2). Therefore, I am satisfied that the plaintiff has met the jurisdictional requirements of the CAFA. See Dart Basin Operating Co., LLC v. Owens, supra, 574 U.S. at 87.

III.

The plaintiff has also met the requirements to provisionally certify

the class.

> In deciding whether to provisionally certify a
> settlement class, a court must consider the same
> factors that it would consider in connection with a
> proposed litigation class—i.e., all Rule 23(a) factors
> and at least one subsection of Rule 23(b) must be
> satisfied—except that the Court need not consider the
> manageability of a potential trial, since the settlement,
> if approved, would obviate the need for a trial.

In re Checking Account Overdraft Litigation, 275 F.R.D. 654, 659 (S.D. Fla.

2011)). The Court must also be satisfied that the proposed class "is adequately

defined and clearly ascertainable." Little v. T-Mobile USA, Inc., 691 F.3d 1302,

1304 (11th Cir. 2012).

The Rule 23(a) requirements are "commonly referred to as

numerosity, commonality, typicality, and adequacy of representation." Id. The

numerosity requirement is clearly satisfied in this case, as the defendants have

identified approximately 13,701 people in the putative class (Doc. 48, p. 12).

Furthermore, the class is adequately defined and readily ascertainable based on the

defendants' business records, from which they can identify the clients whose PII

were on the stolen hard drives.

The commonality component requires the plaintiff to show that the

class members have suffered the same injury, and that the common contention is

capable of classwide resolution, i.e., its determination will resolve an issue that is

8

central to the validity of each of the claims.  Wal-Mart Stores, Inc. v. Dukes, __

U.S. __; 131 S.Ct. 2541, 2545 (2011).  The commonality requirement is met

because the claims of the plaintiff and putative class members arise from the same

event: the security breach that occurred on January 6, 2017, at AHP's office in

Newark, Delaware, when the hard drives containing the PII of the plaintiff and the

putative class members were stolen.  Thus, common factual and legal questions

clearly predominate, such as whether the defendants failed to adequately safeguard

the PII of those customers and, if so, what actionable claims arise from the failure

to do so (see Doc. 48, pp. 13-15).  Furthermore, since the claims arise from the

same security breach, the typicality requirement is also satisfied.  See Kornberg v.

Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (A class

representative's claims are typical of the claims of the class if they "arise from the

same event or pattern or practice and are based on the same legal theory.").

The adequacy component of Rule 24(a)(4), F.R.Civ.P., requires that

the class representative not possess interests which are antagonistic to those of the

class, and that class counsel is qualified and experienced.  These requirements are

also satisfied.  Based on the information before the court, the putative class

representative's claims coincide with those of the proposed settlement class, and

they desire the same outcome of this litigation.  Furthermore, class counsel clearly

possess the qualifications and experience to handle this litigation and act as

settlement class counsel (see Docs. 48-7, 48-8).

Finally, a plaintiff must also establish that the proposed class

9

satisfies at least one of the three requirements listed in Rule 23(b), F.R.Civ.P. Little v. T-Mobile USA, Inc., supra, 691 F.3d at 1304.  In this case, the plaintiff seeks certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals and (2) that the class action mechanism is superior to available methods for the fair and efficient adjudication of the controversy.  As indicated, common questions of law and fact clearly dominate in this case.  As plaintiff's counsel succinctly states (Doc. 48, p. 18):

> Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiff and Settlement Class Members and whether Defendants breached that duty.

Furthermore, the fact that the putative class members' damages will differ does not render class action treatment improper. See Tyson Foods, Inc. v. Bouaphakeo, __ U.S. __; 136 S.Ct. 1036, 1045 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages ...."). Therefore, this factor also supports certification of the proposed class.

A class action in this matter is also a superior method to fairly, adequately and efficiently resolve the claims of the class.  Rule 23(b)(3), F.R.Civ.P; see Little v. T-Mobile USA, Inc., supra, 691 F.3d at 1304.  Thus,

assuming potential class members could retain counsel (which could be difficult considering the relatively small amount of damages), resolution of this dispute on an individual basis would involve unnecessary duplication of proceedings and present a risk of inconsistent results.

Furthermore, there is no indication that the proposed settlement class members have an interest in individual litigation, or an incentive to pursue their claims individually, especially considering the generous monetary and non-monetary remedies available to them under the Settlement Agreement. To the contrary, the defendants notified potential class members of the unauthorized PII disclosure in March 2017 (Doc. 48-1, p. 1, ¶I.C.)—more than two years ago—and counsel stated at the hearing that they are not aware of any other litigation resulting from the security breach. Finally, there are no other apparent factors undermining the superiority of class action certification. In sum, the above findings warrant granting the motion for preliminary certification of the class.

Next, the court "must appoint class counsel ... [who will] ... fairly and adequately represent the interests of the class." Rule 23(g)(1)(B), F.R.Civ.P. The detailed declaration of proposed lead settlement class counsel John A. Yachunis reflects that he is a highly skilled and experienced litigator in class actions and other complex litigation (Doc. 48-7). Ryan J. McGee, proposed class co-counsel, has substantial experience in consumer and commercial litigation (see Doc. 48-8, ¶¶4-6). Furthermore, the Morgan & Morgan law firm has spent substantial resources investigating and litigating these claims, which has

11

culminated in a settlement that appears to be very beneficial to the plaintiff and putative class members (see Docs. 48-7, ¶¶11-16; 48-8, ¶¶8-11). Therefore, plaintiff's counsel clearly satisfies the requirements to be appointed as settlement class counsel. See Rule 23(g)(1)(A)(i)-(iv).

IV.

The plaintiff has also shown that the proposed settlement warrants preliminary approval.

> Rule 23(e)(1) authorizes a court to grant preliminary approval of a proposed class action settlement ... so long as the moving parties demonstrate that the court will "likely be able to" grant final approval to the settlement. Rule 23(e)(2) in turn authorizes final approval only upon a showing that the settlement is "fair, reasonable, and adequate ...."

4 Newberg on Class Actions § 13:15 (5th ed.). Recent amendments to Rule 23 set forth four factors to consider in determining whether a settlement is fair, reasonable and adequate. They are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate and (D) the proposal treats class members equitably relative to each other. Rule 23(e)(2), F.R.Civ.P. These factors do not, however, displace tests previously developed by the courts to make this determination. See 2018 Committee Notes to Rule 23(e)(2), F.R.Civ.P. In this regard, the Eleventh Circuit's complementary approach examines:

12

> (1) the likelihood of success at trial; (2) the range of
> possible recovery; (3) the point on or below the range
> of possible recovery at which a settlement is fair,
> adequate and reasonable; (4) the complexity, expense
> and duration of litigation; (5) the substance and
> amount of opposition to the settlement; and (6) the
> stage of proceedings at which the settlement was
> achieved.

Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).

Considering all the pertinent factors, the Settlement Agreement appears fair, reasonable and adequate. It generously provides for an array of monetary and non-monetary remedies. For example, it compensates class members for fraudulent income tax returns and "out of pocket" losses; it offers two years of identity theft protection at no cost and imposes prophylactic measures to prevent future unauthorized PII disclosures. Therefore, the Settlement Agreement is well "within the range of possible recovery," especially when considering the defendants' denials of wrongdoing and their defenses to this action (see Doc. 29).

Defense counsel outlined, in particular, a damages defense that has some force. As discussed at the hearing, the circumstances of this unauthorized PII disclosure are atypical, as there was no computer database hacked for the obvious purpose of obtaining PII. Rather, the burglars broke into an office and stole physical items: computer hard drives, and even a leaf blower. Defense counsel argued that the theft of the leaf blower exemplifies that this is likely a "garden variety" theft whereby the burglars stole the property for the value of the items

themselves, not in order to access PII on the hard drives. Based on this theory, the possibility that the information would be compromised is substantially reduced.

Buttressing this contention is the circumstance that, to the best of counsel's knowledge, there has not been any allegation from anyone other than the plaintiff that PII on a stolen hard drive was compromised. Furthermore, it is the defendants' position that even the named plaintiff's damages were not caused by this unauthorized disclosure. Thus, they contend that the PII on the stolen hard drives did not contain the named plaintiff's social security number, which was allegedly necessary to apply for the credit cards that were illegally opened in the plaintiff's name.[2] In sum, it is the defendants' position that, if litigation continued, the settlement class members would not be able to prove damages caused by this unauthorized PII disclosure. This defense underscores the reasonableness—and generosity—of the remedies offered by the defendants because it is not certain that the settlement class members would prevail at trial.

Moreover, the Settlement Agreement is the culmination of arm's length negotiations during a day-long mediation before Steven Jaffe, an experienced and respected mediator (see Docs. 48-7, ¶¶14-18; Doc. 48-8, ¶¶11-12). See Rule 23(e)(2)(B), F.R.Civ.P. (whether negotiations are at arm's length is a factor in determining the propriety of a proposed settlement). The parties, furthermore, are represented by skilled and experienced attorneys familiar with

---

[2] They contend that there are indications that the plaintiff had mail stolen from his home mailbox, which may account for the compromise of his PII.

class action litigation. Their knowledge of this matter was evident during the hearing, and plaintiff's counsel outlined in their affidavits the substantial discovery they undertook in this case to ensure that their negotiations were well-informed (Docs. 48-7, ¶¶11-15; Doc. 48-8, ¶¶8-11).[3] Counsel also outlined the multiple factors they considered during the settlement process, including carefully weighing the benefits to the class (see Docs. 48-7, ¶17; Doc. 48-8, ¶14). The varied forms of relief also show that plaintiff's counsel gave thoughtful consideration to the interests of the class.

Finally, there is no evidence at this point of opposition to the Settlement Agreement. Plaintiff's counsel opined that, based on the absence of other lawsuits since the burglary, and the relatively small financial resources of the defendants, he does not anticipate any objectors. However, this factor will be subject to meaningful evaluation after the objection period ends.

In sum, I find preliminarily that the Settlement Agreement is fair, adequate and reasonable.

## V.

Finally, notice of the proposed settlement agreement must be issued "in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1)(B), F.R.Civ.P. The notice shall be as "best [as] practicable under the circumstances, including individual notice to all members

---

[3] In fact, plaintiff's counsel states that, with regard to attorney hours, the "lodestar substantially exceeds the [anticipated] attorneys' fees request" (Doc. 48, p. 10).

15

who can be identified through reasonable effort." Rule 23(c)(2)(B), F.R.Civ.P. Specifically, Rule 23(c)(2)(B) directs that "[t]he notice must clearly and concisely state in plain, easily understood language" the following:

> (i)   the nature of the action;
> (ii)   the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)   that a class member may enter an appearance through an attorney if the member so desires;
> (v)   that the court will exclude from the class any member who requests exclusion;
> (vi)   the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed notices satisfy these requirements. Under the proposal, there are two notices and two additional sources of information for putative class members: a short-form post card notice sent by U.S. Mail, a long-form notice available on a dedicated settlement website or in hard copy by mail, and a telephone settlement hotline (see Doc. 51). The notification process will be administered by a company that specializes in these services (see Doc. 48-9).

Class counsel proposes initially sending the post card to all potential class members who reasonably can be identified from the defendants' business records, which is approximately 13,701 individuals (see Docs. 48, p. 8; 51, ¶6). The post card explains why a settlement class member is receiving the notice; outlines the terms of the Settlement Agreement and the process for submitting a

16

claim; states the process for objecting to, and opting out of, the Settlement Agreement; identifies class counsel and the class members' right to retain their own attorneys; the date and time of the final settlement approval hearing and states in plain language the consequences of not taking action (see Doc. 48-3). The post card also references a telephone settlement hotline and a settlement website for putative class members to obtain further information.

The second notification is a long-form notice which is available on the website by hyperlink. The long-form notice provides more detailed information about the proposed settlement and in larger print (see Doc. 48-4). It is noted that, for those class members who do not have computers or lack computer skills, they may speak with a representative on the settlement telephone hotline for more information, and to obtain by mail a hard copy of the long-form notice and claim form.

I expressed at the hearing my concern that the post card notice contains so much information, and in such small print, that class members—many of whom are elderly—would be less likely, or unable, to read it. Plaintiff's counsel discussed at the hearing that this information is required to be in the notice. However, in order to address my concern about the readability of the notice, it was agreed that the settlement hotline telephone number and the settlement website address will be placed on the front side of the postcard (which contains only a one-paragraph summary of why the individual is receiving the notice) and highlighted in bold print. Highlighting this information on the front side of the post card will

17

bring more attention to these sources of information, which, in conjunction with the short-form notice, give adequate notice to the putative class members.

Additionally, the post card states that class members may obtain a claim form on the website or by asking a representative on the settlement telephone hotline to send a copy of the claim form (see Doc. 48-3). It was agreed at the hearing that the sentence in the post card specifying where to obtain a claim form would also be highlighted to make it easier for class members to see it.

I find that, with these modifications discussed at the hearing, the content and method of the proposed notice is compliant with Rule 23, F.R.Civ.P. and the requirements of due process, and it is the best notice that is practicable under the circumstances.

It is, therefore, upon consideration

ORDERED:

That the Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Doc. 48) is **GRANTED**. The Order Certifying a Settlement Class, Preliminarily Approving Class Action Settlement, and Directing Notice to Settlement Class, is entered separately.

DONE and ORDERED at Tampa, Florida, this 23ʳᵈ day of January, 2020.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

18