**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JOSEPH KUSS, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>v.<br><br>AMERICAN HOMEPATIENT, INC., and LINCARE HOLDINGS, INC.<br><br>               Defendants. | Case No.: 8:18-cv-02348-EAK-TGW |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

On November 8, 2019, Plaintiff Joseph Kuss ("Plaintiff" or "Class Representative"), moved for preliminary approval of the Settlement and for certification of the Settlement Class ("Preliminary Approval Motion").[1] (Doc. 48). On January 23, 2020, this Court granted the Preliminary Approval Motion, (Doc. 59), and certified the settlement class, preliminarily approved the class action settlement, and directed notice to the settlement class. (Doc. 60).

Plaintiff now moves for final approval of the class action settlement and for certification of the Settlement Class. As set forth in the declaration of Cameron Azari, attached as **Exhibit 1** ("Azari Decl."), Epiq Systems, Inc. ("Epiq") implemented an extensive notice program through U.S. Mail, a settlement website, and telephonic hotline. As set forth in his declaration, the notice program reached all potential class members via direct notice. As further set forth in Azari's Declaration, the response from the class has been positive: as of March 20, 2020, Epiq has received 124 Claims Forms, no objections, and one opt-out. Azari Decl., ¶ 25.

Of important note, Epiq suffered a security incident on February 29, 2020, which caused disruption to its operation of its servers (the "Interruption") until approximately March 14, 2020; the toll-free number was down from February 29, 2020, through March 3, 2020; the Settlement Website was down from February 29, 2020, through March 6, 2020, except the ability to file a claim form on the website was restored March 14, 2020. Azari Decl., ¶¶ 27–29. _Because of the Interruption, the parties have already agreed to notify potential class members (via the again-operational Settlement Website) that all deadlines would be extended by 14 days. The parties, therefore, request the Court extend the deadlines accordingly_.

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release ("Settlement"), which was previously filed at Doc. 48-1.

## I.    INTRODUCTION

On January 6, 2017, American HomePatient Inc.'s ("AHP") office in Newark, Delaware was burglarized. AHP is a wholly-owned subsidiary of Lincare Holdings, Inc. ("LHI") (collectively, "Defendants"). The burglar(s) stole five unencrypted computer hard drives potentially containing sensitive and private protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information (collectively, "PII") of up to 13,701 customers/patients of AHP. ("Security Incident").

The proposed Settlement, reached after discovery and following a day-long mediation conducted by Steve R. Jaffe of Upchurch Watson White & Max Meditation Group, on May 10, 2019, provides resolution of the claims of the consumers against Defendants. As set forth in more detail in the Settlement, the Settlement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Defendants. In exchange for the releases in the Settlement, Defendants agreed, as set forth in the Settlement, to reimburse Settlement Class Members for, among other things: 1) Extended Identity Theft Protection; 2) Reimbursement for Self-Paid Identity Theft Protection; 3) Payment for False or Fraudulent Tax Returns; 4) Payment for IRS Tax Transcript Requests; 5) Payment for Eligible Incident Claims; 6) Payment for Out of-Pocket Losses; and 7) Non-Monetary Relief, which includes AHP's adoption and maintenance of certain Enhanced Data Security Measures. Additionally, Defendants agreed to pay separately from and in addition to all other consideration and relief provided or offered by Defendants as part of the Settlement, the costs of administration of the Settlement and Class Notice, any Service Award approved for or awarded to the Settlement

2

Class Representative, and any Fee and Expense Award approved for or awarded to Lead and Settlement Class Counsel. The Settlement offers a significant recovery for class members. This is an excellent result. For the following reasons, Plaintiff respectfully requests the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

## II.    OVERVIEW OF THE SETTLEMENT, NOTICE, AND ADMINISTRATION

### A.  <u>Summary of the Litigation</u>

This class action case was filed against Defendants in September 2018 following Defendants' alleged unauthorized disclosure of Plaintiff's and Class Members' PII to unauthorized third parties. As a result of Defendants' alleged failure to implement and follow basic security procedures—such as, at a minimum, encrypting Plaintiff's and Class Members' PII—Plaintiff's and Class Members' PII was potentially disclosed to unauthorized third parties. (Doc. 24, ¶ 3). Plaintiff, Joseph Kuss, asserted eight claims in his complaint: negligence, invasion of privacy, breach of implied contract, negligence per se, unjust enrichment, breach of fiduciary duty, violations of Florida's Unfair and Deceptive Trade Practices Act, and breach of confidence. (Doc. 24, ¶¶ 133–272).

On November 5, 2018, Defendants moved to dismiss the complaint in its entirety (the "Motion to Dismiss"). (Doc. 21). Subsequently, on November 19, 2017, and before responding to the Motion to Dismiss, Plaintiff filed his First Amended Class Action Complaint. (Doc. 24). Plaintiff's filing of the Amended Complaint mooted the pending Motion to Dismiss. On December 19, 2018, Defendants moved to dismiss the Amended Complaint in its entirety again, (Doc. 29), and on January 25, 2019, Plaintiff responded to that motion (Doc. 32). Before the Court could rule on Defendants' pending Second Motion to Dismiss, the parties agreed to

mediate the case before an independent mediator. (Doc. 37). During the pendency of the Second Motion to Dismiss, the parties exchanged substantial written discovery, Lead and Settlement Class Counsel took the deposition of Defendants' head privacy officer and a witness Defendants designated pursuant to Plaintiff's Rule 30(b)(6) notice concerning, *inter alia*, Defendants' security practices, and Defendants took the deposition of Plaintiff.

**B.   Information about the Settlement**

The parties agreed on and retained Steve R. Jaffe, a highly experienced mediator, to assist the parties in settlement negotiations. Declaration of John A. Yanchunis, *previously filed as* (Doc. 48-7), ¶ 14; Declaration of Ryan J. McGee, *previously filed as* (Doc. 48-8), ¶ 11. On May 10, 2019, the parties had a full-day mediation session with Mr. Jaffe, exceeding nine hours. (Doc. 48-7, ¶ 14); (Doc. 48-8, ¶ 11). The negotiations were hard-fought throughout and the settlement process was conducted at arm's length. (Doc. 48-7, ¶ 15); (Doc. 48-8, ¶ 12). Through the negotiations, Mr. Jaffe was able to assist the parties in reaching an agreement on the substantive terms of the Settlement. *Ibid.* The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. (Doc. 48-7, ¶ 16); (Doc. 48-8, ¶ 13).

It cannot be contested that at all times the parties' negotiations were adversarial, non-collusive, and conducted at arm's length.

**C.   The Terms of the Settlement Agreement**

**1.   The Settlement Class**

The proposed Settlement Class is defined as:

> All individuals in the United States who are current or former patients or customers of Defendants, whose PII was stored on

4

the unencrypted hard drives stolen from Defendants' Newark, Delaware location on or about January 6, 2017, and who suffered injury or harm resulting from the dissemination of their PII.

Excluded from the Settlement Class is the judge presiding over this matter and any members of her judicial staff, the officers and directors of either of the Defendants, and persons who timely and validly request exclusion from the Settlement Class.

**2. The Settlement Benefits**

**a. Monetary Remedies**

Under the Settlement, subject to its terms and conditions and subject to Court approval, Settlement Class Members are eligible to receive substantial relief and reimbursement for the following categories of out-pocket expenses resulting from the Security Incident:

1. Extended identity theft protection for an additional 24 months and insurance for ID theft reimbursement up to $25,000;
2. Reimbursement of self-paid identity theft protection;
3. Payment for false or fraudulent tax returns;
4. Payment for IRS tax transcript requests;
5. Eligible incident claims; and
6. Out-of-Pocket losses;

SA, § V.34(a)–(f).

The aggregate amount of total potential claims reimbursement under the Settlement Agreement ("SA"), ¶ 34 ($1,000,000.00), attorneys' fees, costs, and expenses under the SA, ¶ 61 ($325,000.00), and service award to the Representative Plaintiff under the SA, ¶ ($5,000.00), for which Defendants shall be responsible to pay is capped at $1,330,000.00. Following expiration of the Claims Deadline and after the Settlement Administrator determines which Claims are valid and permissible, and the amounts properly payable for such Claims, Defendants shall provide to the Settlement Administrator all funds necessary to pay the valid and permissible claims, subject to the applicable caps and other provisions of

5

the Settlement Agreement. Defendants shall be obligated to reimburse only those claims that are actually made by Settlement Class Members and approved by the Settlement Administrator. Importantly, unredeemed and uncashed claims checks shall be awarded to The American Lung Association or to any other recipient selected by this Court. The categories (2 through 6 above) of recovery are capped as follows: (1) reimbursement for self-paid identity theft protection: up to $150.00 per claimant, not to exceed $250,000.00 in the aggregate, SA, ¶ 34(b); (2) payment for false or fraudulent tax returns: a single payment of $350.00 per claimant, not to exceed $250,000.00 in the aggregate, SA, ¶ 34(c); (3) payment for IRS tax transcript requests: up to $150.00 per claimant, not to exceed $150,000.00 in the aggregate, SA, ¶ 34(d); (4) eligible incident claims: a single payment of $250.00 per claimant, not to exceed $150,000.00 in the aggregate, SA, ¶ 34(e); and (5) out-of-pocket losses: up to $500.00 per claimant, not to exceed $200,000.00 in the aggregate, SA, ¶ 34(f). If the total amount of valid claims submitted above exceed these respective caps, each individual claim amount shall be reduced in a pro rata amount. SA, ¶¶ 34(b)–(f).

**b. Injunctive Relief**

In addition to the monetary compensation provided to class members by the Settlement Agreement, Defendants have implemented, and/or have agreed to implement, and agree to maintain enhanced security measures, including performance of an external HIPAA risk assessment at least every two years, maintenance of a Head of Information Technology, and training and/or guidance to educate Defendants' workforce on an annual basis concerning information security issues, privacy awareness, and the importance of encrypting PII. Additionally, because Defendants already have adopted encryption and other practices to

6

secure Plaintiff's and its customers' information, no further injunctive relief is sought here.

Thus, through both the opportunity to receive direct monetary payments in amounts up to $1,400.00, enroll in two additional years of identity theft protection, and Defendants' enhanced information security posture resulting from this litigation, Settlement Class Members benefit by the proposed Settlement in a substantive and substantially meaningful way.

### 3. The Notice Program

According to Epiq's media team and consistent with the Notice Program submitted and approved by the Court, the Notice Program provided direct notice to all class members via their previously-known and updated mailing addresses, with additional reach via the Settlement Website and telephone hotline. Azari Decl., ¶¶ 16–24. As of March 20, 2020, Epiq has received a total of 124 Claims Forms (120 Claim Forms filed online through the Settlement Website and four paper Claim Forms received through US Mail). Azari Decl., ¶ 25.

#### a. Direct Notice

Epiq was appointed to implement an extensive notice plan to reach Settlement Class Members. As set forth in the Azari Declaration, Epiq caused the direct notice to the approximately 13,712 Settlement Class Members via postcard for whom physical addresses were available. Prior to mailing, the addresses were checked against the National Change of Address database maintained by the USPS to update any addresses. These postcards were mailed out February 21, 2020. Azari Decl., ¶¶ 16–19.

#### b. Settlement Website

Additionally, notice was provided through the Settlement Website located at: http://www.AHOMSettlement.com ("Settlement Website"), which was available online as of

February 20, 2020. The Settlement Website URL was set forth in the Long Form Notice and Claim Form ("Claim Packet"). Visitors to the website are provided the option to download copies of the Claim Packet and other case-related documents. Visitors are also able to submit claims online and upload supporting documentation. As of March 20, 2020, there have been a total of 3,171 webpage visits with 539 unique visitors. Azari Decl., ¶ 21.

### c.  Telephone Hotline

Epiq established and continues to maintain a toll-free telephone number at (833) 935-1352 for potential Settlement Class Members to call and obtain information about the Settlement and request the Claim Packet. The telephone hotline became operational on February 20, 2020, and has been accessible 24 hours a day, 7 days a week, despite the Interruption. As of March 20, 2020, Epiq has received 558 calls representing 2,915 minutes to the telephone hotline. Azari Decl., ¶ 23.

### 4.  Release of Claims

As set forth in more detail in the Settlement, under the Settlement, each Settlement Class Member will be deemed to have released any and all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, asserted or that might have been asserted, by the Plaintiff or any Settlement Class Member, against Defendants relating to the Security Incident that were or could have been alleged in the litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (1) the theft, exposure, or disclosure of Class Members' PII; (2) Defendants' maintenance, retention, storage, and destruction of Class Members' PII; (3)

Defendants' information security policies, procedures, and practices or training; and (4) Defendants' notice of the Security Incident to Class Members. (Doc. 48-1, ¶¶ 56–59).

III.   **ARGUMENT**

    A.  <u>Certification of the Settlement Class is Appropriate</u>

As this Court has already held, the Settlement Class meets the requirements for certification for settlement purposes under Rule 23. (Docs. 59, 60). Specifically, the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). Fed. R. Civ. P 23(a)(1)–(4), (b)(3). *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative(s), and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); see also *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

A court in a sister district has stated that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Burrows v. Purchasing Power, LLC,* No. 1:12-CV-22800, 2013 WL

10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc.,* 521 U.S. at 620. This case meets all of the Rule 23(a) and 23(b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a. Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). While the exact size of the putative class need not be specified, "'generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors.'" *Cox v. Am. Cast. Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice para. 23.05[1] n.7 (1978)). Here, Defendants identified in discovery approximately 13,712 people in the putative class. Thus, the numerosity requirement is easily satisfied.

#### b. Commonality.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide

resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc*., 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. In this case, the Settlement Class Members are joined by the common questions of law and fact that arise from the same event—the Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff has alleged that the following questions of fact and law are common to the Class:

> Whether and to what extent Defendants had a duty to protect the PII of Class Members; Whether Defendants were negligent in collecting and storing Plaintiff's and Class Members' PII; Whether Defendants had respective duties not to disclose the PII of Class Members to unauthorized third parties; Whether Defendants took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII; Whether Defendants failed to adequately safeguard the PII of Class Members; Whether Defendants breached their duties to exercise reasonable care in handling Plaintiff's and Class Members' PII by storing that information on computers and hard drives in the manner alleged herein, including unencrypted form and/or failing to comply with industry standards; Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Security Incident; Whether storing PII in an unencrypted format was reasonable under industry standards; Whether implied or express

contracts existed between Defendants, on the one hand, and Plaintiff and Class Members on the other; Whether Defendants had respective duties not to use the PII of Class Members for non-business purposes; Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised; Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Class Members; Whether Defendants' conduct violates Florida Statute Section 468.365(e); Whether Defendants' conduct violates Florida Statute Section 468.365(s); Whether Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendants' wrongful conduct; Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and Whether Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Security Incident.

These common issues all center on Defendants' conduct, satisfying the commonality requirement. *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the data breach"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

### c.  Typicality

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that

all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement—Plaintiff's claims are typical of those of Settlement Class Members because they arise from the same Security Incident. They are also based on the same legal theory—Defendants had a legal duty to protect Plaintiff's and Settlement Class Members' PII. Because there is a "sufficient nexus" between the Plaintiff's claims and the claims of Settlement Class Members, the typicality requirement is satisfied. *Hines*, 334 F.3d at 1256.

### d.  Adequacy

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. The adequacy requirement is satisfied. The Class Representative is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. In addition, Lead and Settlement Class Counsel are experienced in class action litigation, and have submitted declarations establishing their skills and experience in handling class litigation around the country and in this District. Thus, adequacy and the requirements of Rule 23(a) satisfied.

### 2.  Predominance and Superiority Requirements of Rule 23(b)(3) Are Met.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class

must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Tele., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class meets these requirements.

### a. Predominance.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Tele., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Mili. Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class…predominate over…individual issues relating to damages…."). Predominance does not require that all questions of law or fact

be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, 123–124 (3d ed. 2005)).

Common issues readily predominate here because the central liability question in this case—whether Defendants failed to safeguard Plaintiff's information, like that of every other Settlement Class Member—can be established through generalized evidence. *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

**b. Superiority.**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359

15

(11th Cir. 2002)). Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class. As noted earlier, any perceived difficulties managing the Settlement Class need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 302–03 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class). A class action settlement is superior to other means of resolution because a settlement affording Settlement Class Members an opportunity to receive compensation benefits *all* parties.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where

16

…it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the parties the benefit of finality, and because this case has now been settled, pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case…would present intractable management problems….").

The Court respectfully should certify the Settlement Class, as the superiority requirement is satisfied, along with all other Rule 23 requirements.

### B.  Plaintiff's Counsel Should Be Appointed as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed and fully explained in Class Counsels' Declarations, attached as Exhibits to Plaintiff's Motion for Preliminary Approval (Docs. 48-7, 48-8), proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation and litigation of those claims, and have successfully negotiated the Settlement of this matter to the benefit of Plaintiff and

the Settlement Class. *Id*. Accordingly, the Court should appoint John Allen Yanchunis Sr. as Lead Class Counsel and Ryan McGee, Charlie Schaffer, and Dan Levin as Class Counsel.

### C.  The Settlement Is Fair, Reasonable, and Adequate

"Settlement of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). "For these reasons, 'there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Id*. (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 114 (S.D. Fla. 2005)). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, No. 8:14-CV-01182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson*, 2016 WL 457011, at *6, quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett*, 737 F.2d at 986). Revisions to Rule 23—effective on December 1, 2018—set for the analysis to be conducted by the Court in determining whether a Settlement is fair, reasonable and adequate: detailed analysis. Rule 23(e)(2) states:

**(2)** *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

>  **(A)** the class representatives and class counsel have adequately represented the class;
>
>  **(B)** the proposal was negotiated at arm's length;
>
>  **(C)** the relief provided for the class is adequate, taking into account:
>
>> **(i)** the costs, risks, and delay of trial and appeal;
>>
>> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
>  **(D)** the proposal treats class members equitably relative to each other.

Thus, the revised rule reflects factors already used in the Eleventh Circuit in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

1. the existence of fraud or collusion behind the settlement;
2. the complexity, expense, and likely duration of the litigation;
3. the stage of the proceedings and the amount of discovery completed;
4. the probability of the Class Representative's success on the merits;
5. the range of possible recovery; and
6. the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement

*Montoya v. PNC Bank, N.A.*, No. 14-20474, 2016 WL 1529902 at *8 (S.D. Fla. April 13, 2016),

(citing *Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors, set forth below, shows this Settlement to be eminently fair, adequate, and reasonable.

### 1. The Settlement Is Not the Product of Fraud or Collusion.

The first factor for final approval requires the Court to consider whether the Settlement was obtained by fraud or collusion among the parties and their counsel. Courts begin with a presumption of good faith in the negotiating process. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson*,

2016 WL 457011, at *6 (quoting *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). In such cases "[t]here is a presumption of good faith." *Id.*

Here, the Settlement was the result of intensive, arms-length negotiations between experienced attorneys who are familiar with class action litigation and the legal and factual issues involved in this case. The Settlement was reached only after mediation before an experienced neutral. Second Declaration of John A. Yanchunis ("2d Yanch. Decl."), ¶ 11; *see, e.g.*, *Blessing v. Sirius XM Radio, Inc.*, 507 F.App'x. 1, 3 (2nd Cir. 2012) (finding that "the district court did not abuse its discretion when it presumed the proposed settlement was fair" where "competent counsel appears on both sides" and "settlement was reached only after contentious negotiations"); *Enter. Energy Corp. v. Columbia Gas Tran. Corp.*, 137 F.R.D. 240, 244 (S.D. Ohio 1991) (approving settlement reached after almost six months of negotiations).

Additionally, the Settlement was reached only after extensive briefing on motions to dismiss and discovery. The parties conducted discovery on all relevant issues, exchanging pertinent documents and taking fact depositions, including Defendants' designated corporate representative concerning, *inter alia*, Defendants' security practices, as well as Defendants' head privacy officer, and Plaintiff. 2d Yanch. Decl., ¶ 10. In short, the parties vigorously litigated this case and understood the issues in the case, testing their theories and defenses. *See* 4 NEWBERG ON CLASS ACTIONS, §13:14 ("Where the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that the settlement negotiations occurred at arms-length.").

There is no doubt this Settlement was at all times arms-length, and therefore carries a presumption of fairness. Where there "is no evidence of any kind that the parties or their

counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement…counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 633, 703 (M.D. Fla. 2005). Class Counsel are in favor of and endorse the proposed settlement. 2d Yanch. Decl. at ¶ 12.

### 2. The Complexity, Expense, and Duration of Further Litigation Supports Approval of the Settlement.

The claims and defenses in this case are complex and vigorously contested. Continued litigation will involve substantial delay and expense, which further counsels in favor of final approval. Even if Plaintiff succeeds in obtaining a contested class certification, Plaintiff and the Class would still inevitably face a challenge to that certification, as well as summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would be significant. Complex litigation—like the instant case—"can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wilson*, 2016 WL 457011, at *7 (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). As a result, non-settlement-based recovery would require additional complex, protracted, and expensive litigation.

In addition, in evaluating this factor, "[t]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma*, 406 F. Supp. 2d at 1323 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)). Because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F.

Supp. 1551, 1554 (M.D. Fla. 1992), there can be no doubt about the adequacy of the present Settlement, which provides meaningful benefits to the Class. Considering the uncertainties inherent in continued litigation, including trial and appeal, along with delays and complexities inherent in this litigation, settlement is in the best interest. *Lipuma*, 406 F.Supp.2d at 1324.

### 3. The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

The stage of proceedings at which settlement is reached is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Wilson*, 2016 WL 457011, at *7 (quoting *Lipuma*, 406 F. Supp. 2d at 1324).

As stated, the Settlement resulted from arms-length negotiations informed by substantial, aggressive, and comprehensive litigation. Between this extensive discovery and briefing the parties could hardly have contested this matter more vigorously, nor done more to understand the strengths and weaknesses of their respective positions. 2d Yanch. Decl., ¶¶ 10–15. Simply put, this matter has been vigorously litigated and, thus, there was no shortage of information and no rush to settlement here. This Settlement was reached after both sides endured the rigors of hard-fought motion practice, discovery, litigation, and mediation.

### 4. The Likelihood of Success at Trial Supports Approval of the Settlement.

"By far the most important factor in evaluating the fairness and adequacy of a settlement is the likelihood and extent of any recovery from the defendants absent the settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the

merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

The Settlement is compelling given the litigation risks Settlement Class Members faced. First, while the Settlement provides meaningful benefits to Class Members nationwide, certifying a nationwide litigation class would have been challenging. 2d Yanch. Decl., ¶¶ 10–15. The Settlement, however, provides nationwide relief for all affected Class Members.

The Settlement Class also faced risks beyond just class certification. Here the Security Incident was perpetrated by unknown third parties, and Defendants strongly contend the stolen hard drives were not compromised and the PII on those hard drives was not leaked to the Dark Web or to other third parties. As a consequence, liability was seriously contested.

By contrast, the proposed Settlement provides certain, timely, and substantial relief. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and the amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confer[red] … to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984). Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial economic benefits that are fair and reasonable.

### 5. The Benefits Provided by the Settlement are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair in light of the potential range of recovery, "the focus is on the possible recovery at trial." *Wilson*, 2016 WL 457011, at *7 (quoting *Saccoccio*, 297 F.R.D. at 693). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118

F.R.D. at 542. Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements fair despite no optimal relief *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Invest. P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

The benefits available here compare favorably to what Settlement Class Members could recover if successful at trial. Specifically, Settlement Class Members will be able to seek relief based upon the affects and repercussions to each of them arising from the Security Incident, up to $1,400. While there is a cap on individual claims, Class Members are able to recover what they might have received at trial had they been successful. 2d Yanch. Decl., ¶ 15.

Class Counsel assert that the Settlement benefits provided to Plaintiff and Settlement Class Members through this Settlement present a substantial recovery, especially considering the strengths of the claims, defenses, and the litigation risks described above.

### 6. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement.

In addition to the factors discussed above, the Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312–13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the

judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel wholeheartedly endorses the Settlement. 2d Yanch. Decl., ¶ 17. Additionally, the reaction of the Settlement Class to the Settlement here has been extremely positive. There have been 124 claims submitted, no objections, and only one exclusion has been received due to a represented death prior to the class period. Azari Decl., ¶ 26. Likewise, at present, neither the United States Attorney General nor any other state attorney general objected to the Settlement despite being directly notified. Attachment 1 to Azari Decl.. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement").

## IV.    CONCLUSION

Plaintiff respectfully requests that the Court enter a Final Order and Judgment Certifying the Class, approving the Class Settlement, and dismissing the action with prejudice.

<u>Local Rule 3.01(g) Certification</u>

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendants regarding the relief requested in this motion and Defendants do not object to the relief sought herein but only in connection with the proposed settlement and final approval of this case. Defendants otherwise reserve all rights and defenses in the case and specifically reserve the right to object to this case proceeding on a class-wide basis for any purpose.

Dated: March 24, 2020                          Respectfully submitted,

*/s/ John A. Yanchunis*
JOHN A. YANCHUNIS
jyanchunis@ForThePeople.com
RYAN J. MCGEE
rmcgee@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

CHARLIE SCHAFFER
CSchaffer@lfsblaw.com
DANIEL C. LEVIN
DLevin@lfsblaw.com
**LEVIN SEDRAN BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 24, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*